LAGESEN, J.
*381 Petitioner seeks judicial review of a final order of the Teacher Standards and Practices Commission (TSPC) that revoked her right to apply for a teaching license after finding that petitioner had engaged in conduct demonstrating "gross neglect of duty" and "gross unfitness." Petitioner argues that TSPC applied the wrong standard of proof for the revocation proceeding, imposed a sanction inconsistent with its prior practice without any explanation for the departure, and failed to support its factual findings regarding her misconduct with substantial evidence and to connect those findings to its conclusions with substantial reason. She further argues that TSPC modified the proposed order of the administrative law judge (ALJ) without identifying or explaining its modifications, and inserted findings related to the sanction that are not supported by substantial evidence or connected to the conclusions by substantial reason. As explained below, we reject petitioner's assignments of error regarding the standard of proof and *388 her challenge to TSPC's findings and conclusions regarding her misconduct; however, because we agree with petitioner that TSPC modified the ALJ's proposed order with respect to the sanction without providing the necessary identification and explanation of those changes and because even as modified the order lacks substantial reason to support revocation, we reverse and remand the order.
I. FACTS AND PROCEDURAL BACKGROUND
A. Historical Facts
We draw the relevant historical facts from TSPC's final order and the undisputed evidence in the record. Multnomah County Sheriff's Office v. Edwards , 361 Or. 761, 776, 399 P.3d 969 (2017) (an agency's unchallenged findings are binding for the purposes of judicial review).[1] Although the order on review includes extensive factual findings, an abbreviated discussion of those facts suffices to frame the issues discussed in this opinion.
*382 For the 2009-10 school year, petitioner was employed by the Eugene 4J School District as a special education teacher at Monroe Middle School, where she was assigned to teach sixth- and seventh-grade Language Arts and Social Studies, as well as a Language Arts support class. The incidents for which petitioner was ultimately sanctioned by TSPC arose from that school year and can be grouped into three categories: conduct related to the development of individualized education programs (IEPs) for students with disabilities; conduct involving a collection of student essays; and conduct related to annual performance testing.
1. Conduct related to IEPs
As a special education teacher, petitioner was part of the team that developed an IEP for each child with a disability. See OAR 581-015-2200 (setting forth content of an IEP); OAR 581-015-2210 (describing makeup of an IEP team). School districts are required by state and federal law to have students' IEPs in place at the beginning of the school year and must update them at least once a year, or more frequently if requested. See generally 34 CFR 300.24 ; OAR 581-015-2225. As part of the process of developing and reviewing an IEP, a school district schedules a meeting with the parents of the child, who are also part of the IEP team. The school district must schedule the meeting at a time mutually agreed upon with the parents and send written notice sufficiently in advance of the IEP meeting. OAR 581-015-2210 ; OAR 581-015-2190.
For the 2009-10 school year, petitioner was responsible for developing the annual IEPs for students KR and FC-E. With regard to KR, petitioner never held the review, falsely recorded that she had, misrepresented that KR's mother and another teacher had been present for the meeting, and then failed to finalize the IEP document or distribute copies to KR's parent or KR's service providers. Later, when confronted with evidence that she had not held the IEP meeting for KR, petitioner misrepresented the facts to the school administration and to TSPC.
Similarly, in the case of FC-E, petitioner failed to hold the required meeting, did not enter any IEP information into the Electronic Student Information System, did *383 not prepare or finalize an IEP for FC-E for the 2009-10 school year, and later misrepresented to school officials and a TSPC investigator that she had conducted an IEP meeting by phone for FC-E. As a result of petitioner's failures to follow the required IEP procedures, the school district reported FC-E as "out of compliance" on its annual Oregon Department of Education census report, and the district was unable to receive funding for services that were delivered to FC-E during the 2009-10 school year.
2. Conduct involving student essays
During the 2009-10 school year, petitioner assigned a writing exercise to her seventh-grade class that involved writing memoirs or short stories based on prompts from a book.
*389 At the end of the school year, petitioner included a collection of those writings in a book that was sent home with all of the seventh-grade students. The students had chosen which of their writings were to be included, and they were aware that their writings would be shared with others. However, petitioner had not communicated with the students' parents about her plans to publish the writings or obtained their permission, nor had she received permission from school administrators.
The writings that went home with students included, among other things, a student's description of a time when his foster parents caught him and other children sneaking candy, made them eat the candy until one of them vomited, and then directed that child to eat the vomit; another student's writing that "I was always scared of my dad when he had parties. He would get drunk and take it out on my [sic ]. * * * He would hit my Butt with a belt."; and students' revelations about their "regrets" (such as punching one's sister) or being in love with other named students.
The collection of writings came to the school district's attention after a parent raised concerns about the sensitive and personal information they contained. Petitioner was a mandatory reporter of abuse under state law, see ORS 419B.010, and school administrators asked her if she had contacted law enforcement or the Department of Human Services (DHS) about any of the information in the writings. Petitioner confirmed that she had not notified law *384 enforcement, the local DHS office, or the administration about any of the students' disclosures.
3. Conduct involving standardized testing
At the beginning of the 2009-10 school year, petitioner and other MMS staff were informed of the school's expectation that students failing to meet benchmarks or performance standards on the Oregon Assessment of Knowledge and Skills (OAKS) test would be retested. In the spring of 2010, petitioner administered a first round of OAKS testing to her sixth- and seventh-grade classes, and nearly all of petitioners' students failed to meet the benchmark or performance standard on the test.
The school's OAKS testing coordinator worked with petitioner to schedule the second round of testing and sent petitioner a reminder of the schedule, but petitioner did not retest her students by the end of the school year. Consequently, those students did not have the opportunity to improve their scores, to meet the standards, or to exceed them and become eligible for additional opportunities in school; the failure to retest the students also contributed to MMS's failure to make "Adequate Yearly Progress"-a measurement of annual achievement growth under federal law-for the 2009-10 school year.
B. TSPC Proceedings and Judicial Review
Petitioner's employment with the school district was ultimately terminated based on her conduct related to IEPs, the collection of student essays, and the OAKS testing. She signed a separation agreement with the district on October 8, 2011, and her teaching license expired in 2012.
TSPC subsequently charged petitioner with conduct constituting "gross neglect of duty" and "gross unfitness" based on the same set of events that led to her termination, and it sought to revoke petitioner's right to apply for a teaching license. See ORS 342.175(1) (authorizing TSPC to suspend or revoke the right of any person to apply for a teaching license as a consequence of, among other things, "gross neglect of duty" or "gross unfitness"). After an administrative hearing on the charges, the ALJ issued a proposed order concluding that petitioner had engaged in conduct *385 constituting "gross neglect of duty" and "gross unfitness" by failing to hold IEP meetings for KR and FC-E, falsifying IEP records to appear compliant, and misrepresenting facts to the administration and TSPC; that petitioner had engaged in conduct constituting "gross neglect of duty" by publishing the collection of student essays and failing to report the incidents of possible abuse that were included in the collection; and that she had engaged in conduct constituting "gross neglect of duty" by failing to have her students retake the OAKS test. The ALJ ruled that TSPC's proposed sanction-revocation of her right to apply for a teaching license-was supported *390 by "reliable evidence" and was appropriate under the circumstances.
Petitioner filed exceptions to the ALJ's proposed order. She argued, among other contentions, that the ALJ had erroneously applied a "preponderance of the evidence" standard of proof rather than the "clear and convincing" standard required for a revocation proceeding involving fraud or misrepresentation, that key factual findings regarding the IEPs, publishing of the essays, and student testing were not supported by substantial evidence, and that "the proposed order fails to indicate what specific evidence constitutes the 'reliable evidence' supporting revocation or distinguishing this case from the others [resulting in lesser sanctions] and does not even attempt to apply the factors [for imposing disciplinary sanctions] in OAR 584-020-0045."[2] Despite those objections, TSPC adopted the ALJ's order in its entirety.
*386 Petitioner then filed a petition for review in this court, reasserting her objections to the findings and conclusions in TSPC's order. Her opening brief advanced three assignments of error: (1) TSPC erred as a matter of law by failing to apply the "clear and convincing" standard of proof; (2) TSPC imposed a sanction that is inconsistent with its own rule and prior agency practice, and it failed to explain the inconsistency; and (3) TSPC's findings and conclusions regarding "gross neglect of duty" and "gross unfitness" were not supported by substantial evidence or substantial reason.
In response to petitioner's opening brief, TSPC withdrew its order and replaced it with an order on reconsideration. The order on reconsideration, unlike the earlier order, modified the ALJ's proposed order. The most significant of those modifications occurred on the final two pages of the order, which elaborated on the bases for the revocation sanction.
Petitioner then filed a supplemental brief that provided additional argument related to her second assignment of error (concerning the sanction) and that asserted two additional assignments of error: a fourth assignment in which she argued that TSPC modified the ALJ's proposed order without identifying or explaining the modifications, and a fifth assignment in which she argued that additional findings in the order on reconsideration were not supported by substantial evidence or connected to the conclusions by substantial reason.
We address petitioner's assignments in a somewhat different order from how they are presented in the briefing. We start with petitioner's assignments concerning the standard of proof, next address the factual findings and conclusions concerning the alleged gross neglect of duty and unfitness, and then finally turn to the assignments of error *387 concerning the sanction of revocation and the agency's modifications of its explanation of that sanction.
II. ANALYSIS
A. Applicable Standard of Proof (First Assignment)
During the hearing, and later in her exceptions to the ALJ's proposed order, petitioner argued that TSPC had the burden of proving *391 charges of falsification and misrepresentation by clear and convincing evidence in a revocation proceeding. The ALJ and TSPC rejected that argument, concluding instead that "[t]he Commission has the burden of proving the allegations by a preponderance of the evidence." In her first assignment of error, petitioner argues that TSPC's conclusion was erroneous, because the preponderance standard does not satisfy constitutional due process requirements for disciplinary proceedings involving revocation based on allegations of fraud or misrepresentation.
We recently addressed a related but not identical argument in Dixon v. Oregon State Board of Nursing , 291 Or.App. 207, 419 P.3d 774 (2018). In that case, the Oregon State Board of Nursing had applied the "preponderance of the evidence" standard in a proceeding to revoke the petitioner's nursing license. The petitioner, relying on an early line of cases from this court, argued that "the board had to prove allegations of fraud or deceit by clear and convincing evidence." Id . at 208-09, 419 P.3d 774 (describing the petitioner's reliance on Bernard v. Bd. of Dental Examiners , 2 Or.App. 22, 36, 465 P.2d 917 (1970), and Van Gordon v. Ore. State Bd. of Dental Examiners , 52 Or.App. 749, 765, 629 P.2d 848 (1981), "both cases in which this court identified the clear and convincing standard as the applicable standard of proof for fraud and deceit allegations in license revocation proceedings"). The nursing board, relying on a later, competing line of cases, determined that the applicable standard of proof in a license revocation proceeding is the preponderance standard, as described in ORS 184.450 (providing that an order in a contested case must be "supported by, and in accordance with, reliable, probative and substantial evidence"). Dixon , 291 Or.App. at 211-13, 419 P.3d 774 (describing *388 Gallant v. Board of Medical Examiners , 159 Or.App. 175, 177, 974 P.2d 814 (1999), and other cases holding that ORS 183.450 dictates the preponderance standard of proof for agency cases).
After exploring that inconsistency in our case law, we expressly overruled those cases applying the clear and convincing standard ( Bernard and Van Gordon ) and adhered instead to more recent cases that tie the standard of proof to ORS 183.450, which prescribes a standard synonymous with the preponderance standard. Dixon , 291 Or.App. at 213-14, 419 P.3d 774. That is, we held that, "short of a constitutional limitation, imposing a higher standard of proof in a particular type of agency proceeding than that provided in ORS 183.450(5) is a matter for the legislature, not the court." Id . at 213, 419 P.3d 774. The petitioner in Dixon failed to identify "legislative adoption of a higher standard of proof for license revocation proceedings or for State Board of Nursing proceedings," and also failed to preserve for review any constitutional challenge to the use of the preponderance standard. Id. at 213-14, 419 P.3d 774. Accordingly, we affirmed the agency's order. Id . at 214, 419 P.3d 774.
Our decision in Dixon resolves the subconstitutional questions presented by this case concerning the correct standard of proof. See generally Haynes v. Board of Parole , 362 Or. 15, 22, 403 P.3d 394 (2017) (describing the court's usual practice of considering a "petitioner's subconstitutional arguments before considering his constitutional (due process) arguments"). Petitioner has not identified any legislative adoption of a higher standard of proof for this type of revocation proceeding or for TSPC proceedings in particular; accordingly, ORS 183.450(5) prescribes the preponderance of the evidence standard for petitioner's revocation proceedings, unless a more exacting standard is constitutionally required.
With that said, we turn to petitioner's argument that the Due Process Clause of the Fourteenth Amendment to the United States Constitution does, in fact, require a higher standard of proof in this case. In Mathews v. Eldridge , 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the United States Supreme Court set forth a three-part balancing test *389 for determining "the specific dictates of due process" when a governmental decision will deprive an individual of a liberty or property interest. Petitioner argues that, as applied to the circumstances here, that balancing test demands that TSPC employ the clear and convincing standard of proof before *392 depriving her of her teaching license or stigmatizing her professional reputation. For the reasons that follow, we are not persuaded by petitioner's argument.
In Mathews , the Court explained that "[d]ue process is flexible and calls for such procedural protections as the particular situation demands," and that "resolution of the issue whether the administrative procedures provided * * * are constitutionally sufficient requires analysis of the governmental and private interests that are affected." 424 U.S. at 334, 96 S.Ct. 893 (internal quotation marks and citation omitted). That analysis requires the consideration of three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id . at 334-35, 96 S.Ct. 893.
With regard to the first factor, we agree with petitioner that the private interests at stake-her professional license and reputation as a teacher-are significant interests. Without a license, petitioner is unable to teach within Oregon's public school system and, as a practical matter, she will be limited in her ability to teach in private schools as a result of a license revocation based on misrepresentations and fraud, which has a stigmatizing effect. See Reguero v. Teacher Standards and Practices , 312 Or. 402, 421, 822 P.2d 1171 (1991) (stating that the consequences of an order denying a petitioner's application to reinstate his teaching license "would be a profound impact on * * * the ability of an individual to pursue a chosen profession"); accord Cleveland Bd. of Educ. v. Loudermill , 470 U.S. 532, 543, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) ("The significance of the private interest in retaining employment cannot be gainsaid. We have *390 frequently recognized the severity of depriving a person of the means of livelihood. * * * While a fired worker may find employment elsewhere, doing so will take some time and is likely to be burdened by the questionable circumstances under which he left his previous job.").
At the same time, while her interests in a teaching license and her reputation go beyond the mere loss of money, they are not as important or fundamental as those interests for which the Court has required or approved a heightened standard of proof. Cf. Cruzan v. Director, Missouri Department of Health , 497 U.S. 261, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990) (clear and convincing standard to terminate an incompetent person's life-sustaining treatment comported with due process); Santosky v. Kramer , 455 U.S. 745, 768, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (requiring clear and convincing standard for terminating parental rights); Addington v. Texas , 441 U.S. 418, 427, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (involuntary commitment proceedings); Woodby v. INS , 385 U.S. 276, 286, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966) (requiring clear and convincing evidence in deportation proceedings); Schneiderman v. United States , 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796 (1943) (denaturalization proceedings). Nor is the revocation of her license permanent and uncorrectable; she can apply to TSPC for reinstatement of her license after one year from the date of the revocation. ORS 342.175(4)(a) ("Except for [circumstances involving certain criminal convictions], any person whose license or registration has been revoked, or whose right to apply for a license or registration has been revoked, may apply to the commission for reinstatement of the license or registration after one year from the date of the revocation."); accord Stogsdill v. Board of Parole , 342 Or. 332, 340, 154 P.3d 91 (2007) (explaining that, in contrast to the circumstances in Cruzan and Santosky , an erroneous decision to postpone the petitioner's prison release date for two years did not "result in a permanent deprivation"). Furthermore, although the license revocation may limit petitioner's ability to teach outside the public school system, it does not foreclose that ability; that is, the revocation does not operate as an absolute bar to pursuing the vocation of teaching in the same way that a revocation operates in other professions or *391 *393 occupations, such as law or medicine.[3] See ORS 339.030 (setting forth exemptions for public school attendance, including by receiving an education from private teachers and parochial schools).
We turn to the second Mathews factor, which examines the risk of erroneous deprivation through the procedures used, and the value of additional or substituted safeguards. "The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to 'instruct the factfinder concerning the degree of confidence our society thinks [that factfinder] should have in the correctness of factual conclusions for a particular type of adjudication.' " Addington , 441 U.S. at 423, 99 S.Ct. 1804 (quoting In re Winship , 397 U.S. 358, 370, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring) ).
"In applying [the second Mathews factor] to * * * the standard of proof, the Court has explained that 'the minimum standard of proof tolerated by the due process requirement reflects not only the weight of the private and public interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants.' " Stogsdill , 342 Or. at 340, 154 P.3d 91 (quoting Santosky , 455 U.S. at 755, 102 S.Ct. 1388 ). "That is, in applying the second Mathews factor, the Court has not asked whether a higher standard of proof will reduce the risk of an erroneous deprivation (it always will); rather, the Court has looked to a 'societal judgment' about how the risk of error should be distributed between the parties." Id .
For that reason, our analysis of the third Mathews factor-the relevant governmental interest-informs the second. The State of Oregon has a vital interest in ensuring the welfare and educational opportunities of students within its schools. See generally Campbell et al. v. Aldrich et al. , 159 Or. 208, 218, 79 P.2d 257 (1938) ("It is unquestionably the function of government to establish and maintain *392 public schools. * * * It is difficult to conceive of any legislative policy which more vitally affects the public welfare."); see also Pendleton School Dist. v. State of Oregon , 345 Or. 596, 615, 200 P.3d 133 (2009) ("The term ['common school' in Article VIII, section 3, of the Oregon Constitution ] carries with it the idea of a basic or minimally adequate education."). Without belaboring the point, the licensing of teachers-and the state's concomitant ability to revoke licenses of teachers who are unfit for the classroom or neglect their teaching duties-is critical to the state's vital interest in educating its students. See ORS 342.121 ("The Teacher Standards and Practices Commission shall issue licenses to teachers and administrators who possess the minimum competencies, knowledge and skills to teach and administer in the public schools of this state." (Emphasis added.) ); ORS 342.175 (setting forth the bases for suspending or revoking a teaching license).
Given the state's strong countervailing interest in the outcome of license revocation proceedings, we are not persuaded that the risk of error in such proceedings should be borne disproportionately by the state and its public school students. See Gallant , 159 Or.App. at 185, 974 P.2d 814 (holding that "the seriousness of that potential harm [from unprofessional conduct by a physician] places the interest of the public above that of a single practitioner and means, in turn, that the licensee should bear the risk of error, rather than the public"); see also Rivera v. Minnich , 483 U.S. 574, 579-82, 107 S.Ct. 3001, 97 L.Ed.2d 473 (1987) (upholding the preponderance standard to determine paternity, in part based on the "equipoise" of interests at stake in the proceeding). Petitioner has not directed us to-nor do we perceive-any basis for concluding that there is a shared societal judgment that teacher licensing boards should err on the side of allowing unfit or neglectful teachers to remain in their roles.[4]
*393 Thus, where the legislature *394 has prioritized the licensing of competent and skilled public school teachers, ORS 342.121 ; ORS 342.175, and made a rational policy judgment that the risk should be borne more equally by the petitioner and the state, by imposing the preponderance standard set forth in ORS 183.450(5), we give weight to that judgment as part of our balancing under Mathews . See Hardee v. State Dept. of Social and Health Services , 172 Wash.2d 1, 12, 256 P.3d 339, 345 (2011) ("Though our inquiry [under Mathews ] concerning the State's interests does not defer to legislative proclamations, statutory aims and objectives serve as strong independent evidence of a public good's value.").
Under the third Mathews factor, we also consider what, if any, fiscal and administrative burdens the additional or substitute procedural requirements would entail. Stogsdill , 342 Or. at 342, 154 P.3d 91 (noting that courts have typically focused on those burdens under the third Mathews factor). In this case, TSPC has not identified any material administrative considerations that a higher standard of proof would impose, and we are not aware of any. Accord id . at 342, 154 P.3d 91 (similarly observing a lack of any meaningful administrative burdens associated with a higher standard of proof).
Considering all three Mathews factors, we hold that due process does not require TSPC to apply a clear and convincing evidence standard of proof in license revocations proceedings, regardless of allegations of fraud or misrepresentation. Petitioner's private interests in her license and *394 reputation as a teacher, although significant, do not justify resort to an enhanced standard of proof that would undermine the state's paramount interest in ensuring the safety, welfare, and education of the students entrusted to its educational system. The preponderance of the evidence standard satisfied due process in this case, and we therefore reject petitioner's first assignment of error.
B. Gross Neglect of Duty and Unfitness (Third Assignment)
In her third assignment of error, petitioner argues that "the final order relied purely on hearsay evidence of other witnesses to find [petitioner's] testimony to be unreliable," and "it improperly rejected other evidence favorable to [petitioner] regarding each of the findings depriving it of substantial evidence and reason." Within that assignment of error, petitioner points to evidence that, in her view, undermines the board's factual findings and, consequently, its legal conclusions. However, our review function under ORS 183.450"is not to substitute a court's findings of fact for an ALJ's [or agency's] findings of fact, when there is substantial evidence in the record for [a] finding. This is true even when there is also substantial evidence to the contrary." Gaylord v. DMV , 283 Or.App. 811, 822, 391 P.3d 900 (2017). That is, "[w]hen in a review role, a court does not review for the better evidence. * * * Review for substantial evidence is review to determine whether a reasonable person *395 could have made the findings supporting the decision, not whether a reasonable person could have made different findings." Id. (internal quotation marks omitted; emphasis added).
Having reviewed the record, we conclude that there is evidence from which a reasonable person could have found the facts as the ALJ and TSPC did with regard to petitioner's conduct relating to the IEPs, the collection of essays, and the OAKS testing, and we further conclude that the final order on reconsideration sufficiently explains how those facts support TSPC's conclusions that petitioner engaged in conduct constituting gross neglect of duty and gross unfitness. See OAR 584-020-0040(4) (defining "gross neglect of duty" as "any serious and material inattention to or breach of professional responsibilities"); OAR 584-020-0040(5) (defining *395 "gross unfitness" as "any conduct which renders an educator unqualified to perform his or her professional responsibilities"). We therefore reject petitioner's third assignment of error without further discussion.
C. Imposition and Explanation of Revocation Sanction (Second, Fourth, and Fifth Assignments)
Petitioner's remaining assignments of error concern TSPC's imposition of the license revocation sanction. In her second assignment, petitioner argues that the imposition of revocation, as opposed to a lesser sanction, is inconsistent with the governing rule, OAR 584-020-0045, as well as TSPC's prior position, practice, and orders, and that TSPC's order failed to explain that inconsistency. In its fourth and fifth assignments, she argues that TSPC modified the ALJ's order-essentially with regard to the sanction-without adequately identifying or explaining those modifications, and that TSPC made additional findings and conclusions in support of the sanction that are not supported by substantial evidence and substantial reason.
As noted earlier, TSPC initially adopted the ALJ's proposed order without modification. TSPC then withdrew that order and substituted a final order on reconsideration. The order on reconsideration modified the ALJ's proposed order, but it did not identify or call out those modifications or otherwise explain them. A comparison of the ALJ's proposed order and TSPC's order on reconsideration reflects the following changes, with additions in bold and deletions in strikethrough:
"After reviewing the record in its entirety, I find the ALJ found that the sanction proposed by the Commission is was appropriate in this matter and is was supported by the reliable evidence in the record. The Commission also finds that the proposed sanction is appropriate. The above findings and conclusions reflect a series of incidents, rather than a single isolated occurrence of misconduct. Moreover, the effect of [petitioner's] misconduct was significant and had negative effects on the public image of the school. The most significant effect of her misconduct was on the education of two special education students, who for one year *396 received education without the individualized planning necessitated by their learning requirements. Another effect was the loss of funding that the District-and by extension, its other students and educators-suffered when it reported student FC-E as 'out of compliance' for the 2009-2010 school year. The public image of the school was also negatively affected: the misconduct related to the IEP meetings was open and notorious at least to the parents who were entitled to participate in those meetings, and the misconduct related to the improperly published student essays was open and notorious to all families in [petitioner's] class. Finally, [petitioner's] actions following her IEP misconduct-and particularly during the Commission's investigation-reveal her mental state to be unwilling or unable to accept responsibility for her actions or understand their significance. Under those circumstances, and notwithstanding any extenuating circumstances that might apply to [petitioner's] case, Accordingly [ petitioner] should have her license revoked. *396 "[Petitioner] contends that a suspension of 90 days is more appropriate and cites to various cases set forth in Exhibits R14 through R16 in support of her contention. However, the cases cited by [petitioner] are factually different than the case at issue: none involve the same combination of OAR 584-020-0045 factors as discussed in the previous paragraph.Moreover, as indicated above, I have determined that the proposed sanction is appropriate and supported by the reliable evidence in the record.Consequently, [petitioner's] argument is unpersuasive."
In her fourth assignment of error, petitioner contends that those changes to the proposed order were significant enough to trigger ORS 183.650(2), which provides that, if an agency "modifies the form of order issued by the administrative law judge in any substantial manner , the agency must identify the modifications and provide an explanation to the parties to the hearing as to why the agency made the modifications." (Emphasis added.) TSPC responds that it had no obligation to identify or explain its changes, because its modifications did not change the outcome or basis of the order but merely "summarized" or "explained" its adoption of the ALJ's order. See OAR 137-003-0665(3) (stating that *397 an order is modified in a " 'substantial manner' when the effect of the modification is to change the outcome or the basis for the order or to change a finding of fact").[5]
TSPC significantly understates its obligations under ORS 183.650(2) and the implementing rule, OAR 137-003-0665(3). An agency's responsibility to identify and explain any modifications is not limited to those that change the outcome of the order. Rather, the implementing rule requires an agency to explain modifications that "change the outcome or the basis for the order ." OAR 137-003-0665(3) (emphasis added). In determining whether modifications change the basis for the order, the modifications are viewed individually and also collectively. See Teacher Standards and Practices v. Bergerson , 342 Or. 301, 319, 153 P.3d 84 (2007) (explaining that the "rule refers to 'the effect of the modifications ' (plural)," which means that an agency's obligations can be triggered by the modifications "viewed individually or together" (emphasis in Bergerson ) ).
In this case, TSPC's additions, viewed together, change the "basis" for the ALJ's proposed order by supplying reasoning that was not present in that proposed order. As described above, the ALJ's order stated that the sanction was "supported by the reliable evidence in the record," and it rejected petitioner's proposed 90-day suspension on the ground that the exhibits cited by petitioner "are factually different than the case at issue." That was the sum of the ALJ's reasoning. In modifying that proposed order-notably, after petitioner sought review and pointed out the lack of explanation in her opening brief in this court-TSPC added multiple sentences and clauses that supplied new reasoning and, at least arguably, inserted additional factual inferences, such as inferences about the effect of petitioner's conduct on the school's "public image." See *398 Bice v. Board of Psychologist Examiners , 281 Or.App. 623, 637, 383 P.3d 913 (2016) (explaining that, "when an agency makes findings that are in addition to those made by the ALJ, those additional findings are modifications of an ALJ's proposed order other than modifications of findings of historical fact," which the agency is required to identify and explain).
Contrary to TSPC's contention on review, it is neither "pointless" nor "technical" to require it to "explain an explanation" in its order. In a contested case proceeding, OAR 137-003-0665(3) entitles a party to an explanation when an agency departs from an ALJ's proposed order by supplying entirely new reasoning-i.e. , a new basis for the order; here, TSPC imposed its most severe sanction, revoking petitioner's ability to apply for a teaching license, and yet it neither *397 identified for petitioner what modifications it made to the ALJ's order nor explained why it made those changes. That error requires us to remand TSPC's order so that the agency can comply with its obligations under OAR 137-003-0665(3).[6]
Finally, turning to petitioner's second assignment, we agree with petitioner that, with or without the modifications, TSPC's order lacks substantial reason to support a sanction of revocation. As the Supreme Court has explained, the substantial reason requirement exists " 'both for purposes of meaningful judicial review and to ensure that the agency gives responsible attention to its application of the [governing] statute.' " Jenkins v. Board of Parole , 356 Or. 186, 195, 335 P.3d 828 (2014) (quoting Ross v. Springfield School Dist. No. 19 , 294 Or. 357, 370, 657 P.2d 188 (1982) ). Thus, the agency must "articulate in a contested case the rational connection between the facts and the legal conclusion it draws from them." Ross , 294 Or. at 370, 657 P.2d 188. And, where the governing statute requires an exercise of the agency's discretion-such as the choice of an appropriate sanction under ORS 342.175 -the agency's explanation must be sufficient to ensure that its decision is within the range of its discretion *399 and is consistent with agency rules, positions, and practices, rather than ad hoc and arbitrary. See ORS 183.482(8)(b) (stating that the court shall remand an agency order if it "finds the agency's exercise of discretion to be: (A) Outside the range of discretion delegated to the agency by law; [or] (B) Inconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency"); Gordon v. Board of Parole , 343 Or. 618, 633-34, 175 P.3d 461 (2007) (explaining that the reasoning underlying the substantial reason requirement "applies equally to [judicial] review of agency orders under ORS 183.482(8)(b)(B)").
In this case, TSPC's explanation of the sanction of revocation fails to meet that standard. Although the modified explanation shows that the agency took into account the factors for imposing disciplinary sanctions set forth in OAR 584-020-0045, it lacks any understandable articulation as to why, in this case, those factors warranted revocation as opposed to a lesser sanction.
The deficiency in TSPC's explanation is particularly apparent when the sanction is compared to other disciplinary decisions in the record, in which TSPC has imposed lesser sanctions for isolated but arguably more egregious misconduct, such as a 90-day suspension for failing to report a colleague's admission of a sexual relationship with a student, a 30-day suspension for failing to report a student's account that she had been raped by another student, who was later arrested on campus, a public reprimand for failing to timely report that a student was in a sexual relationship with the student's uncle, and a public reprimand for failing to report that the teacher's own son, an adult volunteer coach, was in a relationship with a 16-year-old team manager. The final order states that none of the cases identified by petitioner "involve the same combination of OAR 584-020-0045 factors as discussed in the previous paragraph," but we are unable to discern from the order why that combination of factors warranted the highest sanction of revocation. Compare, e.g., In re Day , 362 Or. 547, 636, 413 P.3d 907 (2018) (discussing and comparing previous disciplinary cases before explaining why, "[u]nlike those cases, this case requires at least a lengthy suspension-far longer than any suspension imposed in any prior case; stated differently, a more significant sanction than any previously imposed, short of removal from office").
For that reason, assuming that TSPC adheres on reconsideration to the sanction of revocation when it explains its modifications of the ALJ's proposed order, it also must provide additional explanation of that sanction *398 in order for us to meaningfully review its exercise of discretion.
Reversed and remanded.

As noted at the outset, petitioner argues that TSPC decided the facts using the wrong standard of proof-preponderance of the evidence rather than the clear and convincing standard. However, as we will later explain, we reject that argument and therefore set forth the facts as found in the final order.

OAR 584-020-0045 provides:
"The Commission may consider one or more of the following factors, as it deems appropriate, in its determination of what sanction or sanctions, if any, should be imposed upon a finding that an educator has violated any standard set forth in OAR 584-020-0040 :
"(1) If the misconduct or violation is an isolated occurrence, part of a continuing pattern, or one of a series of incidents;
"(2) The likelihood of a recurrence of the misconduct or violation;
"(3) The educator's past performance;
"(4) The extent, severity, and imminence of any danger to students, other educators, or the public;
"(5) If the misconduct was open and notorious or had negative effects on the public image of the school;
"(6) The educator's state of mind at the time of the misconduct and afterwards;
"(7) The danger that students will imitate the educator's behavior or use it as a model;
"(8) The age and level of maturity of the students served by the educator;
"(9) Any extenuating circumstances or other factors bearing on the appropriate nature of a disciplinary sanction; or
"(10) To deter similar misconduct by the educator or other educators."

See, e.g. , ORS 9.160 ("Except as provided in this section, a person may not practice law in this state, or represent that the person is qualified to practice law in this state, unless the person is an active member of the Oregon State Bar."); ORS 677.080(4) (prohibiting the practice of medicine without the required license).

States have approached the standard of proof for revoking teaching licenses or certificates in different ways, and we do not divine anything approaching a shared "societal judgment" among the states that would allocate the burden to the state. See Cooper v. Oklahoma , 517 U.S. 348, 360, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996) (considering the practices among the states in deciding what standard of proof is required by due process). Some states have applied a preponderance standard to revocation, e.g. , Conn Gen Stat Ann § 10-145b (:)(1) ("In any revocation proceeding pursuant to this section, the State Board of Education shall have the burden of establishing the reason for such revocation by a preponderance of the evidence."), and 24 Pa. Stat. Ann. § 2070.13(c)(2) ("The burden of proof shall be on the [Department of Education of the Commonwealth], which shall act as prosecutor, to establish by a preponderance of the evidence that grounds for discipline exist."); others have applied a higher standard, e.g. , Vt. Stat. Ann. tit. 16, § 1704 ("The burden of proof in matters involving alleged unprofessional conduct or incompetence, including denial of a license based on alleged unprofessional conduct or incompetence, shall be on the Secretary by a preponderance of the evidence, except that in the case of revocation or suspension for more than one year, the proof shall be by clear and convincing evidence."). In Ferris v. Turlington , 510 So.2d 292 (Fla. 1987), the court held that revocation of a teacher's license requires clear and convincing evidence, but it relied on a general understanding that any professional license revocation triggers that higher burden-a proposition that is inconsistent with our case law. See Gallant , 159 Or.App. at 185, 974 P.2d 814 (concluding that the preponderance of the evidence standard satisfied due process in a proceeding to revoke a physician's license).

OAR 137-003-0665(3) is part of the model rules of procedure for contested cases, which TSPC has adopted by reference. OAR 584-001-0005. For purposes of this case, in which neither party challenges the applicability of that definition, we assume that it reasonably conforms to the legislature's intentions with regard to the meaning of ORS 183.650(2). See Teacher Standards and Practices v. Bergerson , 342 Or. 301, 319, 153 P.3d 84 (2007) (proceeding on a similar assumption).

Because the order must be remanded with regard to the bases for TSPC's modifications, we decline to address petitioner's fifth assignment of error, in which she argues that the modifications lack substantial evidence and substantial reason. On remand, TSPC will have an opportunity to better explain the bases for the modifications, and identify any evidentiary support for the modifications, which will facilitate meaningful judicial review.