Argued and submitted October 8, 2020, affirmed December 8, 2021

Devon L. DORN,
*Petitioner,*

*v.*

TEACHER STANDARDS
AND PRACTICES COMMISSION,
*Respondent.*

Teacher Standards and Practices Commission
2016ABC00006; A168583

504 P3d 44

Licensee petitions for judicial review of a final order of the Teacher Standards and Practices Commission (TSPC) that revoked her teaching license. On review, licensee raises six assignments of error that essentially challenge (1) the TSPC's finding that licensee falsified records to support the existence of an individualized education plan (IEP) meeting that did not occur, and (2) the TSPC's choice of license revocation as the sanction. Licensee's first, second, third, and sixth assignments challenge the sanction. The fourth assignment challenges the finding that licensee falsified records, and the fifth assignment challenges the TSPC's failure to make findings about the "frequency of simple errors in special education" in the district and "the practice of remediation through the state Department of Education and the state evaluation statute as testified to by" licensee's expert witness. *Held*: Licensee conceded, and the Court of Appeals agreed, that the first assignment of error was moot. In addition, the other assignments that challenged the sanction provided no basis for reversal because the TSPC's order was supported by substantial evidence and reason. As to licensee's fourth assignment, the TSPC did not err in finding that licensee falsified IEP meeting records, because that finding was supported by substantial evidence. Lastly, as to her fifth assignment, the question of how "simple errors" were addressed was irrelevant because licensee's errors went beyond "simple mistakes"; therefore, the TSPC was not required to make findings specific to the testimony of licensee's expert on that topic.

Affirmed.

Barbara J. Diamond argued the cause for petitioner. Also on the briefs was Diamond Law.

Jona J. Maukonen, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

MOONEY, J.

Affirmed.

## MOONEY, J.

Licensee petitions for judicial review of a final order of the Teacher Standards and Practices Commission (TSPC) that revoked her teaching license. On review, licensee raises six assignments of error that essentially challenge (1) the TSPC's finding that licensee falsified records to support the existence of a meeting that did not occur, and (2) the TSPC's choice of revocation as the sanction. Licensee's first, second, third, and sixth assignments challenge the sanction. The fourth assignment challenges the finding that licensee falsified records, and the fifth assignment challenges the TSPC's failure to make certain findings. Licensee concedes, and we agree, that the first assignment is moot. We address the remaining assignments below. We conclude that the TSPC's order, including its choice of sanction, is supported by substantial evidence and reason. We affirm.

We review an agency's order in a contested case for errors of law, ORS 183.482(8)(a), substantial evidence, ORS 183.482(8)(c), and substantial reason, *Sachdev v. Oregon Medical Board*, 312 Or App 392, 405, 494 P3d 1018 (2021). Our review is restricted to the record. ORS 183.482(7). A finding is supported by substantial evidence so long as "the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c). Substantial reason exists where the agency has articulated a "rational connection between the facts and the legal conclusion" that the agency draws from them. *Sachdev*, 312 Or App at 406. We review the TSPC's application of ORS 342.175,[1] the governing statute, for substantial evidence and reason. *Id*. at 405.

We draw the relevant historical and procedural facts from the TSPC's final order and the undisputed evidence

---

[1] ORS 342.175 provides, in pertinent part, that:

"(1) The Teacher Standards and Practices Commission may suspend or revoke the license or registration of a teacher or administrator, discipline a teacher or administrator, or suspend or revoke the right of any person to apply for a license or registration, if the licensee, registrant or applicant has held a license or registration at any time within five years prior to issuance of the notice of charges under ORS 339.390 or 342.176 based on the following:

"* * * * *

"(b) Gross neglect of duty;

"(c) Any gross unfitness[.]"

in the record. Licensee taught special education classes at North Valley High School in Grants Pass from 2003 to 2013. During the 2011-12 school year, licensee experienced significant medical problems, underwent surgery, and developed substance and alcohol dependence issues. During the following school year, she fell behind in her individualized educational plan (IEP) paperwork and did not timely complete IEP files for 28 of her 30 students. Questions arose about whether licensee had followed policy in conducting IEP meetings and whether she had falsified documents to create evidence of an IEP meeting that had not occurred. Licensee sent emails to other teachers requesting modification of student grades indicating that those students were on modified diploma tracks when they were not. Licensee was initially placed on an action plan and shortly after that she was arrested for DUII relative to a motor vehicle accident in which she "sideswiped" a vehicle with several high school students in it. Licensee was terminated from her position at North Valley High School and, as staff searched her desk area for her keys, they located a soda bottle with alcohol in it. Licensee acknowledged that the bottle of alcohol was hers. The TSPC charged her with "gross neglect of duty" and "gross unfitness," in violation of ORS 342.175(1)(b) and (c).

A four-day contested case hearing was conducted before an administrative law judge (ALJ). The questions of whether licensee had misrepresented that she held an IEP meeting for a particular student on November 27, 2012, and whether she had falsified IEP documents to create evidence that the meeting had actually occurred, was the subject of much testimony and argument. The ALJ found that licensee's testimony about the November 27 IEP meeting was not credible. He concluded that licensee committed gross neglect of duty, was grossly unfit to be a teacher and that revocation was "an appropriate sanction." The ALJ proposed that the TSPC issue an order concluding that licensee

"committed gross neglect of duty and demonstrated gross unfitness. Her license should be revoked, with revocation stayed; she should serve a 90 day suspension; she should abstain from all alcohol or non-prescribed controlled substances, and she should be required to provide

monthly reports on the timeliness of her special education paperwork."

The ALJ explained that he was recommending a stay of the revocation because licensee's violations occurred during a period of time that corresponded with her struggle to overcome alcohol-related issues and, further, that she had completed alcohol treatment, was engaged in ongoing recovery work, and had been successfully employed in two subsequent teaching positions—one in Medford and one online. Licensee filed a number of exceptions to the ALJ's proposed order and sanction.

The TSPC considered the ALJ's proposed findings and conclusions of law along with licensee's exceptions to the proposed order. It adopted the ALJ's findings of fact and credibility and, like the ALJ, concluded that (1) licensee had committed "gross neglect of duty" and (2) revocation was an appropriate sanction. The TSPC, however, did not adopt the ALJ's conclusion that licensee was "grossly unfit," explaining that she had "sought alcohol treatment" and was "sober as of the time of the contested case hearing." The TSPC also declined to adopt the ALJ's proposal to stay the revocation and impose probationary-style conditions, explaining that,

"having exercised its discretion to consider the pertinent factors in OAR 584-020-0045, the Commission determines that revocation of the license in this case is appropriate for the following reasons:

- "Conduct involved falsification of special education records

- "Conduct involved a vulnerable population

- "Conduct risked educational opportunities to students

- "Conduct risked harm to the school district

- "Conduct involving alcohol in school is not tolerable under any circumstances

- "Licensee has failed to take accountability for falsifications

"The above reasons, along with the Commission's discussion of each violation above, support imposition of license revocation in this case. The Commission, in its exercise of

discretion, does not believe that a lesser sanction is appropriate in this case. Licensee's conduct created a risk of harm to all of her students. And it created a risk of harm to those who rely on student IEPs and the IEP process, including students and other educators. *See* OAR 584-020-0045(4) (risk to students, other educators, or the public). Further, Licensee was willing—at the time of the falsifications and afterwards—to cover-up shortcomings in her professional performance, rather than addressing issues that arose. *See* OAR 584-020-0045(2) ('likelihood of a recurrence of the misconduct or violation') and (4) ('educator's state of mind at the time of the misconduct *and afterward*') (emphasis added).

"Licensee's failure to take accountability for the falsifications is particularly significant to the Commission in choosing to impose revocation. The Commission shares the ALJ's concern with petitioner's continued 'lack of credibility' regarding the November 27, 2012 IEP. ALJ Barber found Licensee's testimony about the November 27, 2012 IEP meeting lacked credibility for a number of reasons. In particular, as ALJ Barber found, Licensee continued in her testimony to maintain that the IEP meeting had occurred and, in fact, her 'claimed certainty about the November 27, 2012 IEP meeting grew even more specific at the time of her testimony in May 2017.'

"The Commission finds Licensee's testimony on her treatment and work performance does not compel a sanction less than revocation. Licensee testified *after* she had completed her inpatient treatment."

This petition for review followed.

We begin with the fourth assignment of error because it relates to the TSPC's factual findings and conclusions concerning the specification of gross neglect of duty alleging that licensee falsified IEP records. Licensee contends that the TSPC's finding that she "fabricated the record of an IEP meeting" is not supported by substantial evidence and reason. We disagree.

The TSPC adopted the ALJ's findings of fact and credibility determinations. The TSPC thus concluded that licensee's testimony about the November 27, 2012, IEP meeting was not credible, that "the meeting did not actually occur," and that licensee contrived the supporting

paperwork. In its final order, the TSPC explained how it reached that conclusion by walking through licensee's testimony and earlier statements and noting that her memory grew more specific with the passage of time. Reasoning that memories tend to fade rather than sharpen with the passage of time, the TSPC discounted licensee's testimony that the meeting occurred. In finding that the meeting did not occur, the final order describes how other evidence—the lack of "contemporaneous paperwork," such as calendar entries, phone logs and the hand-written notice; the absence of signatures on the IEP paperwork submitted before December of 2012; the parent's testimony that he did not receive notice of the November 27 meeting; and the testimony of one of the teachers who said that the meeting did not occur and the other teacher who did not recall such a meeting— considered in conjunction with licensee's testimony led to that conclusion. That explanation supports that conclusion on this record.

As we have explained,

> "our review function under ORS 183.450 'is not to substitute a court's findings of fact for an ALJ's [or agency's] findings of fact, when there is substantial evidence in the record for [a] finding. This is true even when there is also substantial evidence to the contrary.' *Gaylord v. DMV*, 283 Or App 811, 822, 391 P3d 900 (2017). That is, '[w]hen in a review role, a court does not review for the *better* evidence. * * * Review for substantial evidence is review to determine whether a reasonable person could have made the findings supporting the decision, not whether a reasonable person could have made different findings.' *Id.* (internal quotation marks omitted; emphasis added)."

*Robin v. Teacher Standards & Practices Comm.*, 291 Or App 379, 394, 421 P3d 385 (2018) (omission and brackets in original). We conclude that "a reasonable person could have found" that licensee falsified the IEP meeting records despite her testimony to the contrary and despite the signatures on the IEP paperwork sent to the parents in March of 2013. *Id.*

We next turn to licensee's fifth assignment, in which she asserts that the TSPC erred "when it failed to make findings about the frequency of simple errors in special

education, in [the district], and the practice of remediation through the state Department of Education and the state evaluation statute as testified to by" licensee's expert witness.[2] We disagree.

An agency's final order must include "a concise statement of the underlying facts supporting the findings as to each contested issue of fact and as to each ultimate fact required to support the agency's order." ORS 183.470(2). Conversely, an agency need not make specific findings as to nonprobative facts. *See Automotive Technology v. Employment Division*, 97 Or App 320, 324, 775 P2d 916, *rev den*, 308 Or 592 (1989). Here, licensee's argument is directed to the issue of whether her IEP paperwork deficiencies constituted serious and substantial violations of the TSPC's rules. The TSPC adopted the ALJ's findings about the Special Education Director's investigation into licensee's IEP and eligibility paperwork, including a comparison of licensee's files "with more than 80 files in the district" and the director's conclusion that "only [l]icensee was routinely untimely in her IEP paperwork," with most of her files being incomplete. Licensee's errors went beyond "simple mistakes" because she was not in substantial compliance with the requirements of her position. The question of how "simple errors" are addressed is, therefore, not relevant, and findings specific to the testimony of licensee's expert on that topic were not required.

We next turn to licensee's second assignment, in which she contends that the TSPC failed to adequately explain "how its choice of sanction squares with its other decisions," and to her third assignment, in which licensee contends that the TSPC abused its discretion when it chose the sanction of revocation, "because that sanction is far more severe than sanctions issued in similar or more severe cases of gross neglect of duty." In licensee's combined arguments regarding those assignments, she argues that the choice of sanction is inconsistent with prior decisions of the TSPC

---

[2] As part of the fifth assignment, licensee also argues that the TSPC erroneously construed gross neglect of duty in such a way that any "late paperwork, standing alone," would constitute *per se* gross neglect of duty. We do not agree that the TSPC construed gross neglect of duty in that way, and we reject that argument without further discussion.

and that the TSPC failed to make an adequate record for review, requiring reversal and remand to allow the TSPC to explain its choice of sanction and to eliminate implicit bias.[3]

We disagree that the TSPC's choice of sanction is "inconsistent" with prior TSPC decisions. We also do not agree that the TSPC needed to do more to explain any perceived inconsistency with prior agency decisions. Licensee points to several TSPC cases to argue, by comparison, that the sanction imposed on her license is excessive. While TSPC did not address specific comparator cases in its final order, it did explain that "[t]he circumstances in this case are sufficiently different from the prior Commission orders on which [l]icensee relies," and it then described the circumstances of this case in detail.

The eleven cases cited by licensee all resulted in sanctions less severe than revocation. The conduct involved in those cases included various combinations of violating IEP protocols, falsifying records, inappropriate physical or verbal contact with students, and alcohol-related issues. Licensee essentially argues that the conduct in those cases, when compared to her conduct, ranges from similar to more severe. And, given that none of those cases resulted in license revocation, she argues that the TSPC should explain why it decided that revocation was appropriate in her case. We are not persuaded, however, that it was necessary, on this record, for the TSPC to distinguish or otherwise explain each specific case cited by licensee in order to adequately explain its decision to revoke licensee's teaching license.

Fact-matching between similar cases is inexact. As in many other types of cases, the application of professional standards in licensing cases requires careful attention to the subtleties of each case. *See State v. Sierra*, 349 Or 506, 515 n 5, 254 P3d 149 (2010), *adh'd to as modified on recons,*

_____

[3] Licensee has not sufficiently developed her argument or the record concerning implicit bias, and therefore, we decline to address it. *Cf. State v. Thompson*, 328 Or 248, 254 n 3, 971 P2d 879, *cert den*, 527 US 1042 (1999) (explaining that the court would not address constitutional claims in the absence of "thorough and focused constitutional analysis"). If implicit biases in the agency or trial court are suspected in that setting and a party perceives that those biases have unfairly affected the outcome, a record must be made in that forum that is adequate for judicial review or appeal before we may address them.

349 Or 604, 247 P3d 759 (2011) ("Factmatching can be a misleading enterprise."); *Gardner and Gardner*, 212 Or App 148, 156, 157 P3d 320 (2007) (acknowledging that fact-matching is "especially treacherous" in marital dissolution actions); *State v. Roberts*, 183 Or App 520, 524, 52 P3d 1123 (2002) (recognizing that "fact-matching is not helpful" in the civil commitment context).

Eight of the cases cited by licensee—nearly three quarters of them—were concluded by stipulated order. The remainder were concluded by default order. Here, there was neither a default nor a stipulation. Instead, the order revoking licensee's license was entered after a full contested case proceeding in which the facts were determined following the receipt of exhibits and presentation of testimony. That alone distinguishes this case from each of licensee's proposed comparator cases.

Public reprimands, suspensions, and probation imposed by stipulated order are sanctions necessarily entered into by mutual agreement of the TSPC and the licensee. Stipulated orders generally reflect terms agreed to through negotiations and compromise. Default orders are entered solely on the basis of notice and the passage of time, although even default orders may be entered with a licensee's knowing acquiescence. Stipulated orders and default orders are alike in that they generally issue without the insight that evidence and testimony provide in cases where, as here, a full hearing is conducted.

Here, the TSPC adopted the ALJ's credibility findings and findings of fact. And, importantly, the TSPC agreed with the ALJ's conclusion that revocation is the appropriate sanction. To be sure, the TSPC declined to stay the revocation as proposed by the ALJ, but there is *no disagreement* between the ALJ and the TSPC that revocation is an appropriate sanction under the circumstances of this case. The ALJ proposed that the sanction be stayed, based upon licensee's sobriety at the time of the hearing, to allow her an opportunity to regain her license through continued sobriety—not unlike the opportunity that a suspended sentence or diversion agreement would offer in a criminal setting.

The TSPC explained its view that such an opportunity was not warranted, because even after licensee had completed treatment and achieved sobriety, she continued to falsely assert that the November 27 IEP meeting had taken place. Licensee argues that she was entitled to testify as she did and, further, that the record does not support that she falsified the IEP meeting and associated records. But, as we have already discussed, that finding is supported by substantial evidence and reason. Moreover, the TSPC provided additional insight into its decision not to stay the license revocation when it discussed licensee's sobriety in the context of the reasoning behind its conclusion that licensee was not "grossly unfit." The TSPC's explanation of how licensee's alcohol-related issues and achievement of sobriety factored into its decision-making process is adequate.

This is not a case that requires reversal under *Robin*. *Robin* explores the adequacy of agency explanations under ORS 183.650(2) and OAR 137-003-0665(3) when the agency modifies an ALJ's proposed order in "any substantial manner." 291 Or App at 396-98. *Robin* also clarifies that, even in the absence of modifications to the ALJ's proposed order, and even "where the governing statute requires an exercise of the agency's discretion—such as the choice of an appropriate sanction," such a decision must be supported by substantial reason. *Id.* at 398. That is, an explanation of the rational connection between the facts and the choice of sanction is required. *Id.*

The agency provided that here. It pointed out, through the use of footnotes, when its final order departed from the ALJ's proposed order, and it explained why it departed in the body of the order. It explained that licensee's conduct warranted revocation due to "the nature of her conduct and failure to take accountability for it by testifying in a manner that was not credible." It provided a detailed explanation of the nature and severity of the conduct (falsifying records, concerning a vulnerable population—special education students, placing student opportunities at risk by providing incorrect information about diploma tracks, keeping alcohol in her desk at school), and it explained how licensee's "lack of accountability" factored into its decision to impose revocation.

Licensee argues that the TSPC's reliance on licensee's "failure to take accountability" and its conclusion that she is "unlikely in the future to be forthright about any shortcomings[,] *** thereby increasing the likelihood of a recurrence of misconduct," are "illogical" and not supported by the record. We agree that revocation would be improper if based solely on licensee's decision not to admit the alleged misconduct and to instead require that the agency establish those allegations by the requisite evidentiary standards and burdens. But in explaining its choice of sanction, the TSPC explained its reliance on the serious nature of licensee's conduct, including falsifying records to create evidence of an IEP meeting that did not occur. It explained that licensee's continued insistence that the meeting occurred in the face of substantial evidence to the contrary was particularly concerning to it. It emphasized that licensee gave her not-credible testimony even after "she had completed her inpatient treatment." The TSPC's concern was not that licensee disputed the charges against her or that she requested a contested case hearing. Its concern came instead from the fact that licensee gave false testimony about the charge that she had falsified IEP records in order to create false evidence of a meeting that had not occurred. That is very different.

Contesting allegations is different than giving false testimony about the conduct underlying the allegations. As already discussed, the TSPC adopted the ALJ's finding that licensee's testimony about the November 27 meeting and associated paperwork was neither truthful nor reliable. It was appropriate for the TSPC to consider that licensee gave untruthful testimony after she achieved sobriety as it assessed whether licensee has sufficient insight into her past conduct to effectively reduce the risk that the conduct will happen again.

Licensee contends that, as in *Robin,* the TSPC modified the ALJ's proposed order "without reconciling its decision with previous decisions." She argues that the TSPC gave the same explanation for revoking her license here as it did in *Robin* and that the explanation is as inadequate here as it was in *Robin*. But in *Robin*, the TSPC neither identified what modifications it made to the ALJ's proposed order nor explained why it had made those changes. As we have

already discussed, the TSPC identified the modifications it made to the ALJ's proposed order through the use of footnotes, and it explained why it made those modifications in the body of the order. Moreover, this is not a case where the TSPC modified the order by "supplying entirely new reasoning" or a "new basis for the order." *Id.* at 396-97. The basis of the ALJ's proposed order and the TSPC's order is the same. The ALJ and the TSPC agree that revocation is an appropriate sanction here. The primary difference between the two orders is that the ALJ proposed staying the revocation in light of licensee's recovery work, and the TSPC instead relied on licensee's recovery work to find in her favor on the charge of gross unfitness. We conclude that TSPC's order adequately explains why it did so. *Robin* does not compel a different result on this record.

Affirmed.