No. 7            April 9, 2020            103

IN THE OREGON TAX COURT
REGULAR DIVISION

Robert ROUTLEDGE,
*Plaintiff*,

*v.*

DEPARTMENT OF REVENUE,
*Defendant*.

(TC 5344)

On cross-motions for summary judgment in this personal income tax case, Plaintiff asserted that the renumeration from his employer was not "wages" for federal income tax withholding purposes because his employer was not a public employer. Defendant argued that Plaintiff's earnings were subject to Oregon personal income tax and sought penalties, including the False Return with Intent to Evade Tax penalty under ORS 314.400(6)(b). The court rejected Plaintiff's arguments and held that Plaintiff owed the tax. The court then determined that the false return penalty applies if a taxpayer falsely prepares and files a return with a purpose of using specious or fallacious arguments to avoid a tax the taxpayer knows is owed. The court held that the penalty applied in this case because (1) Plaintiff understood that he owed the tax when he filed a return with zero Oregon income tax liability; and (2) his arguments were wholly illogical and objectively unreasonable.

Submitted on cross-motions for summary judgment.

Robert Routledge, Plaintiff, filed the cross-motion *pro se*.

Daniel Paul, Senior Assistant Attorney General, Department of Justice, Salem, filed the motion for Defendant Department of Revenue.

Decision for Defendant rendered April 9, 2020.

**ROBERT T. MANICKE, Judge.**

## I.   INTRODUCTION

This matter comes before the court on the parties' cross-motions for summary judgment regarding Plaintiff's personal income tax liability for tax year 2016.

## II.   FACTS

Plaintiff's Form W2 (Wage and Tax Statement)[1] for 2016 from his employer, VTech Communications, Inc.

---

[1] Unless otherwise indicated, references to forms are to federal income tax forms published by the Internal Revenue Service (IRS).

(VTech), indicates that VTech paid Plaintiff $129,967.23 in "wages, tips, other compensation." VTech withheld no federal or Oregon income tax, presumably at Plaintiff's direction pursuant to a Form W4,[2] but it did withhold $9,231.52 in federal Social Security and Medicare taxes.[3] On or about February 13, 2017, Plaintiff wrote a letter to the IRS stating that the Form W2 he had received from VTech was erroneous because VTech "is not engaged in a 'trade or business' defined as performing the functions of a public office - IRC 7701(a)(26)." When Plaintiff filed his federal income tax return for 2016, dated April 17, 2017, Plaintiff included a Form 4852 (Substitute for Form W2) purporting to correct the Form W2 from VTech by reporting $0 in wages, with the explanation that Plaintiff disputed having received any "'wages' as defined in IRC § 3401(a) and IRC § 3121(a)" because he did not "perform any services in the course of a 'trade or business' as defined [in] IRC § 7701(a)(26)." On his federal return Plaintiff reported that he had $0 in income, and he claimed a refund of the $9,231.52 that VTech had withheld in Social Security and Medicare taxes, although he characterized that amount as "Federal *income* tax withheld." (Emphasis added.) On or about October 30, 2017, the IRS issued Plaintiff a full refund of the $9,231.52 requested. The record does not indicate whether the IRS has since sought to recover the refund of Social Security and Medicare taxes or asserted a deficiency of federal income tax based on the absence of any withholding of that tax. Plaintiff reported on his Oregon tax return that he had $0 in taxable income for 2016.

---

[2] The Form W4 for 2016 allowed an employee to control the amount of income tax withholding from his or her wages (including eliminating withholding) by adjusting the number of personal allowances claimed (such as for dependents) or by claiming exemption from income tax withholding, and by delivering the form, signed under penalty of perjury, to the employee's employer. *See* https://www.irs.gov/pub/irs-prior/fw4—2016.pdf (accessed Apr 1, 2020).

[3] Federal law imposes Social Security and Medicare taxes at fixed percentage rates multiplied by the amount of wages. In general, the employer is directly liable for one set of such taxes, and the employer must also collect an equal amount of such taxes from the employee by withholding them from wage payments to the employee. In contrast to income tax withholding, the employee cannot adjust the amounts of Social Security or Medicare taxes that the employer must withhold. *See* IRC § 3101 (imposing taxes on employee); IRC § 3111 (imposing taxes on employer).

Defendant audited Plaintiff's 2016 Oregon personal income tax return and issued its findings and a notice of deficiency on August 7, 2017. Defendant concluded that Plaintiff's federal taxable income for 2016 was $129,967.23; that his Oregon taxable income was $127,812; and that Plaintiff owed $11,292 in Oregon personal income tax. Defendant also imposed penalties for substantial under-statement, intent to evade, and filing a frivolous return. On September 4, 2017, Plaintiff filed a written objection. Defendant responded to the written objection on September 18, 2017, and issued a Notice of Assessment pursuant to ORS 305.265 on September 25, 2017.[4] Plaintiff contested the Notice of Assessment in the Magistrate Division, which issued a final decision denying Plaintiff's appeal and imposing a penalty of $1,000 under ORS 305.437.

### III.   ISSUES

(1)  Is Plaintiff's remuneration from his employer income?

(2)  Are penalties and attorney fees justified?

### IV.   ANALYSIS

A.  *Is Plaintiff's remuneration from his employer income?*

Plaintiff's position is that the remuneration he received from his employer for services is not income for federal income tax purposes and thus for Oregon personal income tax purposes. Plaintiff acknowledges that he performed services for VTech, which he describes as an "electronics manufacturer" that is not a public employer. He acknowledges that the money VTech paid to him is "[r]emunerations" for his services. He relies on the following legal arguments:

1.  *Plaintiff's argument under IRC section 3401(a)(11)*

Plaintiff claims that his remuneration is excepted from the definition of "wages" for federal income tax

---

[4] References to the Oregon Revised Statutes (ORS) are to the 2015 edition. References to the "IRC" or the "Code" are to the Internal Revenue Code as in effect for 2016. References to "sections" refer to provisions of the Code or, in context, to federal Treasury Regulations promulgated pursuant to the Code.

withholding purposes because his employer is not a public employer.[5] Under IRC section 3401(a)(11), "'wages' means all remuneration *** for services performed by an employee for his employer, *** except that such term shall not include remuneration paid *** for services not in the course of the employer's trade or business ***." Under IRC section 7701(a)(26), the term "trade or business" "includes the performance of the functions of a public office." Plaintiff argues that IRC section 7701(a)(26) excludes from the definition of "trade or business" any item that is not in the "same general class" as a public office. From there, Plaintiff argues that "a private enterprise is not within the class of a public office"; therefore, a private enterprise (*i.e.*, Vtech) does not engage in a "trade or business."

Plaintiff's argument fails because it misses the larger point that, regardless of whether his remuneration fits within the federal definition of "wages," it is nonetheless *income* and thus subject to Oregon personal income tax. Under federal law, wages are only one possible source of "income," which is defined broadly as "all income from whatever source derived." IRC § 61(a)(1). The definition of "income" goes on to include "[c]ompensation for services ***." *Id.*; *see also* Treas Reg § 1.61-2 (defining "compensation for services"). Plaintiff acknowledges that the payments he received from VTech are "remuneration" for his services. Based on the plain meaning of the terms, "remuneration" is synonymous with "compensation," and Plaintiff does not argue otherwise. *See Webster's Third New Int'l Dictionary* 1921 (unabridged ed 2002) (*Webster's Third*).[6] Plaintiff's pay

---

[5] The Code contains separate definitions of "wages" for the various federal employment taxes. The definition for income tax withholding purposes is in IRC section 3401(a). The definition for Social Security and Medicare tax purposes is in IRC section 3121(a). *See also* IRC § 3306(b) (definition under Federal Unemployment Tax Act).

[6] In a similar vein, Plaintiff also cites IRC section 6041(a) in arguing that his compensation is not income. That statute governs annual "information reporting" on IRS Form 1099 and provides:

"All persons engaged in a trade or business and making payment in the course of such trade or business to another person, of rent, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable gains, profits, and income (other than payments to which section 6042(a)(1), 6044(a)(1), 6047(e), 6049(a), or 6050N(a) applies, and other than payments with respect to which a statement is required under the

from VTech during 2016 is income to him under federal law, and therefore also for purposes of Oregon personal income tax. *See* ORS 316.022(6) (Oregon taxable income determined by reference to federal taxable income).

Plaintiff's argument also fails on its own terms because the definition of "trade or business" does not begin and end with IRC section 7701(a)(26). IRC section 7701(c) provides: "The terms 'includes' and 'including' when used in a definition contained in this title shall not be deemed to exclude other things otherwise within the meaning of the term defined." Subsection (c) thus requires the court to include within the meaning of a "trade or business" an employer's activities that are "otherwise" within the meaning of "trade or business." Plaintiff describes Vtech as an "electronics manufacturer" and refers to it as a "private enterprise." Plaintiff nowhere asserts that Vtech's activities are outside the definition of a trade or business in the ordinary meaning of the term; he asserts only that IRC section 7701(a)(26) must be read narrowly to exclude a private enterprise from the definition of "trade or business" as used in IRC section 3401(a)(11). Based on subsection 7701(c), Plaintiff is wrong.

2.  *Plaintiff's other arguments on the merits*

Plaintiff also makes arguments under IRC section 3121(a)(7)(A) and Treas Reg section 31.3121(b)4. Those provisions have no bearing on whether Plaintiff's remuneration constitutes income for Oregon personal income tax purposes because they do not "relat[e] to federal income taxes" as required by ORS 316.012. In defining Oregon

---

authority of section 6042(a)(2), 6044(a)(2), or 6045), of $600 or more in any taxable year *** shall render a true and accurate return to the Secretary *** setting forth the amount of such gains, profits, and income, and the name and address of the recipient of such payment."

By its terms, section 6041(a) merely requires persons in a trade or business to report certain forms of payments. It does not purport to define "income," and it lists only certain specific kinds of payments that must be reported. The provision also expressly excludes large classes of payments, such as wages paid and payments aggregating less than $600, and a regulation under section 6041(a) excludes payments to most corporations. *See* Treas Reg § 1.6041-3(p)(1). Given the many items to which section 6041(a) does *not* apply, the fact that only persons engaged in a trade or business are required to file Form 1099 does not support Plaintiff's argument that only payments from a person engaged in a trade or business are income to the recipient.

taxable income, Oregon applies "the various provisions of the Internal Revenue Code *relating to the definition of income.*" ORS 316.007(2) (emphasis added). Section 3121 of the Code is part of the Federal Insurance Contributions Act, which imposes Social Security and Medicare taxes. As noted, those taxes are measured exclusively by "wages" and not by taxable "income." Plaintiff's references to section 3121 of the Code and related Treasury Regulations do not help his case.

Plaintiff argues that the IRS "affirmed that the remunerations received from Vtech Communication did not constitute 'wages' or any other taxable income in multiple written determination notices."[7] If this were true, it would not matter, because IRS determinations in an individual case are not binding on this court. *See, e.g.*, *Dept. of Rev. v. U-Haul Co. of Oregon*, 20 OTR 195, 208-11 (2010). But Plaintiff also exaggerates the import of the two communications from the IRS on which he relies for this argument.

The first communication is a Notice of Adjusted Refund on IRS Form CP12, dated October 30, 2017. The notice states: "We believe there's a miscalculation on your 2016 Form 1040, which affects the following area of your return: *** We made changes to your return that correct this error. As a result, you are due a refund of $9,231.52." Elsewhere on the same page, the notice shows $0 after the phrase "Tax you owed." These formulaic statements tell the court nothing about the IRS's reasoning and have no persuasive value. When the IRS pays out a refund shortly after a taxpayer files a return, the IRS has the benefit of periods of multiple years to recover the refund, including an unlimited period if the taxpayer has filed a false or fraudulent return with the intent to evade tax. IRC § 6501(a) (general three-year period of assessment, starting with filing of return); IRC § 6501(c) (no limitations period if intent to evade tax). The IRS also has significant collection tools, including certain rights to claim priority as against other creditors. *See generally* Boris I. Bittker & Lawrence Lokken, *Federal Taxation of Income, Estates and Gifts* ¶ 113 (3rd ed 2019).

---

[7] The court reads the quoted language as an indication that Plaintiff understands that the concepts of "wages" and "income" are separate, and that wages are only one type of income.

The fact that the IRS chose to accept Plaintiff's claim at face value, at least as of late 2017, tells the court nothing about the IRS's view of the claim's validity.

The second communication on which Plaintiff relies is even less helpful to the court. The IRS issued Plaintiff a letter dated December 27, 2016, informing him that his claim for a refund for the tax year 2012 was time-barred. Nothing in the record tells the court on what basis Plaintiff claimed a refund for 2012, but whatever the reason, the IRS never reached it because the IRS concluded that Plaintiff had made the request too late. Thus, the letter cannot reasonably be read to have anything to do with Plaintiff's argument in this case.

The court concludes that none of Plaintiff's substantive arguments against Defendant's assessment of tax have merit. The court sustains the assessment of tax.

### 3. *Procedural arguments*

Plaintiff claims that he received no lawful "assessment," apparently relying on a position that an Oregon notice of assessment is invalid unless it is signed and otherwise complies with the requirements of Treas Reg section 301.62031. Defendant issued a Notice of Assessment dated September 25, 2017. Plaintiff does not allege that the notice fails to comply with Oregon law, and the court is not aware of any Oregon law or rule that requires a notice of assessment to be signed. *Cf. Dept. of Rev. v. Faris*, 345 Or 97, 190 P3d 364 (2008) (rejecting taxpayer's argument that notice of deficiency was defective because not signed). Plaintiff overlooks the fact that Oregon does not automatically incorporate federal tax administrative or procedural requirements. *See Allison v. Dept. of Rev.*, 11 OTR 431, 434-35 (1990).

Plaintiff argues that there is a dispute of material fact that precludes summary judgment. However, Plaintiff cites only legal arguments, and the court sees no material fact in dispute.

Citing no authority, Plaintiff claims that the doctrine of "estoppel" "warrants the waiver of any penalty and interest" because Defendant took a year to issue its determination. The court is not authorized to waive penalties or

interest, and there is no evidence that Plaintiff has applied for a waiver from Defendant.

## B.  *Penalties and Attorney Fees*

The court now turns to the various additional amounts that Defendant claims against Plaintiff: the penalties for substantial understatement of tax (ORS 314.402), intent to evade tax (ORS 314.400(6)), and filing a frivolous return (ORS 316.992); the penalty under ORS 305.437; and attorney fees under ORS 20.105(1). All of these additional impositions require the court to undertake some analysis of the reasonableness of Plaintiff's position. Overall, as discussed above, the court concludes that Plaintiff's arguments are wholly unreasonable. His substantive arguments depend entirely on statutes that do not define "income": (1) IRC section 3401, a withholding tax statute that defines "wages" (which even Plaintiff acknowledges is only a subset of income); IRC section 6401(a), a Form 1099 statute that likewise applies only to certain subsets of income; and (3) Social Security and Medicare tax statutes that do not define income for *federal* income tax purposes, let alone for Oregon income tax purposes. Plaintiff's proffered definition of "trade or business" is a distraction created by his selective reading of portions of IRC section 7701. The elaborate nature of Plaintiff's arguments does not disguise their complete lack of logic. The court now discusses each additional amount that Defendant seeks.

## 1.  *Substantial understatement of tax (ORS 314.402)*

The 20 percent penalty for substantial understatement of tax[8] under ORS 314.402 is mandatory[9] if a taxpayer other than a C corporation or a personal holding corporation understates the taxpayer's net tax by more than a stated amount, in this case, $2,400. *See* ORS 314.402(2). However, an understatement is reduced to the extent that the taxpayer either (a) had "substantial authority" for the

---

[8] Defendant at one point erroneously refers to the 20 percent penalty under ORS 314.402 as a penalty for "understatement of income," presumably reflecting an earlier version of the statute that measured the penalty by gross income rather than the amount of tax. *See* Or Laws 2015, ch 32, § 1.

[9] *See* ORS 314.402(1) ("there *shall* be added to the amount of tax required to be shown on the return a penalty equal to 20 percent of the amount of any underpayment of tax attributable to the understatement" (emphasis added)).

position or (b) had a "reasonable basis" for the position and "adequately disclosed" the relevant facts on the return. *See* ORS 314.402(4)(b). Thus, a taxpayer must show at least a "reasonable basis" for the position in order to achieve any reduction of the substantial understatement penalty. As the analysis above shows, Plaintiff's position is so lacking in basic logic that the court must conclude that Plaintiff had no reasonable basis for reporting taxable income of $0 on his Oregon return for 2016.

2.  *False return with intent to evade tax (ORS 314.400 (6)(b))*

The 100 percent penalty under ORS 314.400(6)(b) is mandatory if the taxpayer filed a "falsely prepared" return with an "intent to evade tax."[10] The court is not aware of decisions of the Oregon Supreme Court or of this division of the Tax Court that analyze this penalty, including its statutory predecessors discussed below. Defendant seems to assume that the penalty requires behavior constituting fraud and asserts that Plaintiff's sudden decision to report income of zero after years of filing correct returns in reliance on a frivolous legal argument indicates fraud. Plaintiff defends on the grounds that he corresponded openly with the taxing authorities and never concealed his position. ("All material correspondences and replies with both the department and the IRS were submitted and accepted into evidence, and covered under my personal testimony. The record and evidence clearly show there was no intent to hide, conceal, or evade any tax.") He asserts further that Defendant bears the burden of proof as to each element of this penalty and that he is entitled to a "presumption of innocence until proven guilty."

The court first determines the elements that must be present for this penalty to apply, then the standard and burden of proof. The court begins by examining the text of the statute in context, along with any relevant legislative history. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). ORS 314.400(6)(b) provides:

---

[10] *See* ORS 314.400(6) ("A penalty equal to 100 percent of any deficiency determined by the department *shall* be assessed and collected if * * * [t]here is a failure to file a report or return *with intent to evade tax*; or [a] report or return was falsely prepared and filed *with intent to evade the tax*." (Emphases added.)).

"A penalty equal to 100 percent of any deficiency[11] deter-mined by the department shall be assessed and collected if:

"* * * * *

"(b)   A report or return was falsely prepared and filed with intent to evade the tax."

a.   Text analysis

The text requires the acts of preparing a return falsely and filing the return, along with a mental state of intent to evade the tax. The court has determined above that Plaintiff's return is false, and there is no dispute that it was filed. The dispute is about the meaning of "intent to evade." The statute does not define any part of the statutory sentence as a phrase, nor does it define any term separately. The court, therefore, must first determine whether the legis-lature intended to use a "technical term." *See, e.g.*, *Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 296, 337 P3d 768 (2014). If not, the court must determine the plain meaning of the words the legislature chose. Both of these tasks require the court to decide the date or dates when the legislature adopted this language so that the court can determine the plain meaning from sources contemporaneous with that adoption. *See id.* at 295-96 & n 7 (consulting contemporane-ous dictionaries).

(1)   Reference date or dates to determine tech-nical or plain meaning

The court starts with the most recent enactment, on which Defendant relies, and concludes by working back-ward in time that the provision at issue originated in 1929, with a significant modification in 1951. The law in effect for 2016, ORS 314.400(6)(b), was enacted in 1981; however, the legislative history indicates nothing about the meaning

---

[11] The court emphasizes that the penalty amount is 100 percent of the *defi-ciency*. The deficiency is the additional amount that Defendant has determined a taxpayer owes, over and above whatever the taxpayer has paid through with-holding or other means. Without minimizing the import of this penalty, the court notes that the amount is not 100 percent of a taxpayer's net income, as is some-times mistakenly understood. Nor is the penalty 100 percent of a taxpayer's total tax liability unless, as here, the taxpayer has elected no withholding and has not made quarterly estimated tax payments or other payments.

of the term or terms, except that the legislature intended to borrow the entire provision verbatim from ORS 305.265, which the legislature left in place as a parallel provision.[12] *See former* ORS 314.400(3)(b) (1981), *renumbered as* ORS 314.400(6)(b) (2007); ORS 305.265(13). ORS 305.265(13), in turn, was enacted in 1977, but the legislative history indicates that the legislature viewed that provision as simply a recodification of a provision enacted in 1951 and codified in 1953 as ORS 315.605(2)(b). The 1951 provision was materially identical to the 1981 text:

> "Penalties shall be imposed as follows:
>
> "*****
>
> "(b)   If the return was falsely prepared and filed with intent to evade the tax imposed by this Act, 100 percent of the deficiency."

Or Laws 1951, ch 554, § 1; OCLA 110-1621(b). However, the 1951 language contained only one material difference from text adopted in 1929, when the legislature first conceived the personal income tax and the corporation excise tax. The 1929 text applicable to the personal income tax read:

> "If the understatement [of income] is false *or fraudulent*, with intent to evade the tax, the tax on the additional income discovered to be taxable shall be doubled and an additional 1 per cent per month or fraction of a month shall be added."

Or Laws 1929, ch 448, § 21; Oregon Code, title LXIX, ch 15, § 69-1521(4) (1930) (emphasis added); *see also* Or Laws 1929, ch 427, § 21; Oregon Code, title LXIX, ch 13, § 69-1321(d)

---

[12] The 100 percent penalty in ORS 305.265(13) applies to a wide range of taxes for which a return or report is required. ORS 305.265(1) ("Except as provided in ORS 305.305, the provisions of this section apply to all reports or returns of tax or tax liability filed with the Department of Revenue under the revenue and tax laws administered by it, except those filed under ORS 320.005 to 320.150."). By contrast, the 100 percent penalty in ORS 314.400(6)(b) applies only to income taxes and to any other taxes that incorporate the administrative provisions of income tax law. *See, e.g.*, ORS 403.230(1) (applying the provisions of ORS chapters 305, 314, and 316 to the tax for emergency communications). Although these two penalties overlap conceptually, they do not cumulate in amount. *See* ORS 305.992(2) ("total amount of penalties imposed for any taxable year under *** ORS 305.265(13) [and] 314.400 *** may not exceed 100 percent of the tax liability"); *see also* OAR 150-305-0214(2).

(1930) (identical text applicable to corporation excise tax). The 1929 legislature referred the newly adopted personal income tax act to the voters, including the penalty provision, and the voters adopted it in 1930. *See Official Voters' Pamphlet*, General Election, Nov 4, 1930, 26, 32, 62. Thus, the words "false[] *** with intent to evade the tax" have been in place since 1929, and the legislative history of later reenactments contains nothing indicating an intention to assign any specific new meaning to the words.

### (2)    Technical meaning analysis

It is conceivable that the legislature in 1929 (and the people in 1930) may have had in mind a technical meaning for the complete phrase "false or fraudulent, with intent to evade the tax." As of those years, the Internal Revenue Code contained nearly identical language in the penalty and limitations period provisions, and the 1929 legislature clearly was aware of the federal law, as evidenced by the statutory requirement to attach a copy of the taxpayer's federal return when filing an Oregon return. *See* Or Laws 1929, ch 448, § 35 ("Every taxpayer shall, upon request of the commission, furnish a copy of the return for the corresponding year, which he has filed or may file with the federal government of the United States ***."); Oregon Code, title LXIX, ch 15, § 69-1535(4) (1930); 26 USC § 2293(b) (1925 & Supp. II 1928) ("Fraud. –If any part of any deficiency is due to *fraud with intent to evade tax*, then 50 per centum of the total amount of the deficiency *** shall be so assessed ***." (Emphasis added.)). However, the court concludes that the Oregon legislature in 1951 departed from any such technical meaning when it changed the phrase by dropping any reference to "fraud." None of the surviving materials documenting the legislative history from the 1951 change indicates any intent to use any portion of the new text as a technical term.[13]

---

[13] The Internal Revenue Code, meanwhile, has preserved virtually the same phrase. *See* IRC § 6501(c) (referring to "a false or fraudulent return with the intent to evade tax"). A body of federal case law has developed interpreting the phrase as used in federal law, but those cases generally rely on the entire phrase, including the term "fraudulent." *See, e.g., Neely v. Comm'r*, 116 TC 79, 86 (2001) (citing *Parks v. Comm'r*, 94 TC 654, 664-65 (1990) (looking at taxpayer's behavior to determine whether his understatement of income was a product of "fraudulent intent")). Because the Oregon Legislature changed the Oregon statute in 1951,

### (3)  Plain meaning analysis

Having identified no technical meaning, at least after the 1951 law change, the court will consider dictionary definitions of "intent" and "evade" that are contemporaneous with the 1929 enactment, then test for any material change in plain meaning by consulting dictionaries available through 1981. Because both terms have established legal meanings, and also are used in ordinary writing, the court starts with contemporaneous legal dictionaries. *See, e.g.*, *Dept. of Rev. v. Croslin*, 345 Or 620, 628, 201 P3d 900 (2009) (looking to *Black's Law Dictionary* for definition of "damages"). The 1933 edition of *Black's* defines "intent" to mean

> "[p]urpose; formulated design; a resolve to do or forbear a particular act; aim; determination. In its literal sense, the stretching of the mind or will towards a particular object ***."

*Black's Law Dictionary* 993 (3d ed 1933). The edition of *The Oxford English Dictionary* published closest to 1951 defines "intent" as

> "[t]he act or fact of intending or proposing; intention, purpose (formed in the mind) *** [i]ntent or assiduous effort, endeavor[,] *** [d]esign, plan, project, scheme."

*The Oxford English Dictionary* 377-78 (2d ed 1933).[14] The 1934 edition of *Webster's* defines "intent" as

> "[a]n intending or purposing; also, that which is intended or purposed *** hence, design; purpose *** [f]rame of mind; understanding *** import; significance; the purpose

---

this court must proceed carefully before treating federal cases as persuasive authority in interpreting the 100 percent penalty statutes in Oregon law. In this matter, the court sees no need to consider federal cases.

[14] Dictionaries published after 1951 but before 1981 use similar words to define "intent." *See The American Heritage Dictionary* 682 (1st ed 1969) ("intent" means "[t]hat which is intended; aim; purpose *** [t]he state of mind operative at the time of an action *** [m]eaning; purport *** [f]irmly fixed; concentrated *** [h]aving the attention applied; engrossed *** [h]aving the mind fastened upon some purpose"). A later edition of *Black's* defines "intent" to mean "[d]esign, resolve or determination upon which a person acts" adding that "intent" *** [is] rarely susceptible of direct proof, but must ordinarily be inferred from the facts. It presupposes knowledge. *** A mental attitude which can seldom be proved by direct evidence, but must ordinarily be proved by circumstances from which it may be inferred. ***" *Black's Law Dictionary* 727 (5th ed 1979).

or purport which gives intelligibility \*\*\* [e]ndeavor; effort directed to accomplishment."

*Webster's New International Dictionary* 1292 (2d ed, unabridged 1934) (*Webster's Second*). *See Webster's Third* at 1176 (defining "intent," in part, to mean "design or purpose \*\*\* an end or object proposed").[15] Inclusion of the word "purpose" across all three sources suggests that the legislature in 1929, the public in 1930, and the legislature thereafter all would have understood the term "intent" to mean that the taxpayer prepares and files the false return purposefully, to avoid a tax that the taxpayer understands himself or herself to owe.[16]

The 1933 edition of *Black's* defines "evasion" as "a subtle endeavor to set aside truth or avoid the punishment of the law." *Id.* at 693-94. For example:

"[I]f one person says to another that he will not strike him, but will give him a pot of ale to strike first, and, accordingly, the latter strikes, the returning the blow is punishable; and, if the person first striking is killed, it is murder, for no man shall evade the justice of the law by such a pretense. \*\*\* In a general way the words 'suppression,' 'evasion, and concealment' mean to avoid by some device or strategy or the concealment or intentional withholding some fact which ought in good faith to be communicated."

*Id.* (citations omitted).

*Webster's Second* does not include the word "concealment" in its definition of "evade," though, like the 1933 edition of *Black's*, *Webster's Second* suggests the term was commonly understood to require avoidance of a known obligation through subtle maneuvering:

"[evade:] [t]o escape; to slip away; \*\*\* [t]o take refuge in evasion; to use artifice in avoidance \*\*\* [t]o get away from by artifice; to avoid by dexterity, subterfuge, or ingenuity; as, to evade a blow, a pursuer, a punishment; to evade the force of an argument \*\*\* [e]scape, shun; foil, steal away from[,] \*\*\* [t]o EVADE is to escape or avoid, often by the use

---

[15] *See State v. James*, 266 Or App 660, 667 n 4, 338 P3d 782 (2014) (treating *Webster's Third* as a contemporaneous source for statutes dating from 1961 forward because that dictionary's primary content has remained static since 1961).

[16] In other words, for the penalty to apply, the taxpayer must know better than to file as he or she does.

of skill, dexterity, or contrivance; to ELUDE (which implies less of volition; *cf.* the implications of evasive, elusive), to slip away from or baffle, often slyly, cunningly, or adroitly[.]"

*Id.* at 883. *Webster's Third* defines "evade" using examples of strategic behavior:

"[T]o slip away : give someone the slip *** to take refuge in evasion *** use craft or stratagem in avoidance : avoid facing up to something *** to manage to avoid the performance of (an obligation) : escape from doing or experiencing (something disagreeable)[.]"

*Id.* at 786. According to the first edition of *The American Heritage Dictionary*, published in 1969, "evade" can also encompass mental trickery:

"To escape or avoid by cleverness or deceit: evade arrest *** [t]o avoid fulfilling, answering, or performing: evade responsibility *** [t]o baffle or elude: *The accident evades explanation* *** [t]o use cleverness or deceit in avoiding or escaping."

*Id.* at 453 (italics in original). Similarly, *The Oxford English Dictionary* defines "evade" using examples of both physical and psychological manipulation:

"to get away, escape; *** [t]o escape by contrivance or artifice from (attack, pursuit, adverse designs; an assailant, pursuer, or adversary; to avoid, save oneself from (a threatened evil or inconvenience); to elude (a blow), avoid encountering (an obstacle); *** [t]o contrive to avoid (doing something); to 'get out of' performing (a duty), making (a payment), etc.; *** [t]o avoid giving a direct answer to (a question, request, charge); to put off *** [t]o escape yielding to (an argument, claim, or obligation), admitting (a conclusion), acknowledging (a fact) by means of sophistry *** [t]o defeat the intention of (a law, stipulation, etc.), by specious compliance with its letter."

*Id.* at 327.

The foregoing sources do not indicate that "evasion" requires that a taxpayer conceal information from the taxing authorities. As the example of the use of trickery to provoke a barroom brawl shows, one can also "evade" by engagement ("[t]o *contrive* to avoid (doing something)," *id.* (emphasis

added); "get away from by *artifice*; to avoid by *dexterity*, *sub-terfuge*, or *ingenuity*," *Webster's Second* at 833 (emphases added)). Proffering fallacious arguments ("sophistry"), or "specious compliance" with the law, suffices when combined with the intent to avoid a known obligation to pay tax.[17]

### b.　Statutory context and legislative history

The statutory development discussed above, including the legislative history of each change, reveals nothing that alters the plain meaning of the terms. The court has found no legislative history on point for the 1929 act, and nothing on point in the 1930 Voter's Pamphlet. The few items available documenting the legislative history of the 1951 act discuss none of the issues raised in this case.[18]

The court finds it unnecessary to reach a conclusion regarding Defendant's characterization of this penalty as a "fraud" penalty. Despite the legislature's removal of the word "fraudulent" in 1951, there is some evidence that "fraud penalty" may be an accurate label. According to the current edition of *Black's*, "tax evasion" is synonymous with "tax fraud." *See Black's Law Dictionary* 1763 (11th ed 2019). Similarly, the 1933 edition of *Black's* included the word "fraud" as a synonym for "evasion." *Id.* at 693-94.[19] Nevertheless, the

---

[17] The Internal Revenue Code, meanwhile, has preserved virtually the same phrase. *See* IRC § 6501(c) (referring to "a false or fraudulent return with the intent to evade tax"). A body of federal case law has developed interpreting the phrase as used in federal law, but those cases generally rely on the entire phrase, including the term "fraudulent." *See, e.g.*, *Neely v. Comm'r*, 116 TC 79, 86 (2001) (citing *Parks v. Comm'r*, 94 TC 654, 664-65 (1990) (looking at taxpayer's behavior to determine whether his understatement of income was a product of "fraudulent intent"). Because the Oregon legislature changed the Oregon statute in 1951, this court must proceed carefully before treating federal cases as persuasive authority in interpreting the 100 percent penalty statutes in Oregon law. In this matter, the court sees no need to consider federal cases.

[18] No relevant committee minutes exist, and the surviving committee exhibits relate to a set of proposed changes to prior law that ultimately were not adopted. *See* Jonathan Hay, Memorandum from the State Tax Commission, Jan 16, 1951 (on file with the Oregon State Archives) (recommending new intermediate "negligence penalty of 25 percent of the tax deficiency in order to bridge the large gap which now exists in the statutes between the ordinary 5 percent penalty and the 100 percent penalty imposed in cases of false and fraudulent returns"). In the course of considering these amendments, the legislature without explanation removed the reference to fraud from the 100 percent penalty.

[19] In addition, the available legislative history of what are now ORS 305.265(13) and ORS 314.400(6)(b) shows that individual legislators have

court sees no need to analyze whether the elements of this penalty match those required for fraud because the legislature eliminated the term "fraud" in 1951 and the foregoing analysis suffices to define the elements of the penalty.

### c.   Conclusion applying *Gaines* analysis

Based on the text of ORS 314.400(6)(b), and taking into account the statutory context and the limited legislative history available, the court concludes that the 100 percent penalty applies if a taxpayer falsely prepares and files a return with a purpose of using specious or fallacious arguments to avoid a tax the taxpayer knows is owed.

### d.   Standard and burden of proof

Before applying the court's conclusion to the facts in this case, the court considers Plaintiff's arguments that a higher standard of proof applies to the penalty under ORS 314.400(6)(b) and that Defendant bears the burden of proving the elements of the penalty. ORS 305.427 provides:

> "In all proceedings before * * * the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief and the burden of going forward with the evidence shall shift as in other civil litigation."

The court is not aware of a statutory exception to the preponderance of evidence standard or to the requirement that a plaintiff bear the burden of proof as the party seeking affirmative relief from an assessment of tax and penalties. Plaintiff's assertion that he is entitled to "the presumption of innocence until proven guilty" suggests that he views

---

sometimes referred to both penalties as "fraud penalties." *See* Audio Recording, Senate Subcommittee on Justice, SB 600, Mar 31, 1981, Tape 99, Side A and B at 44:05-48:51 (statements of Sen Jan Wyers and Sen Walter Brown). However, the court views this as a shorthand label that may have originated with Defendant rather than with the legislature. Defendant's administrative rule has consistently used the phrase "fraud penalty" since 1959, starting eight years after the legislature removed the word "fraud" from the statute. *Compare* OAR 150-305-0214 ("A fraud penalty imposed pursuant to ORS 305.265(13) is separate and distinct from delinquency penalties as it relates to the nature of the deficiency itself."), *with former* State Tax Commission Regulation 4.405(5) (1959) ("The penalties imposed pursuant to ORS 314.405(5) are separate and distinct from the 'delinquency penalties' * * *. [They] relate to the nature of the deficiency itself * * *.").

imposition of the penalty under ORS 314.400(6)(b) as a criminal matter, which it is not. *Cf.* ORS 305.990 (defining various tax-related acts as crimes).[20] Nor is "a more exacting standard *** constitutionally required." *See Robin v. Teacher Standards and Practices Comm.*, 291 Or App 379, 388, 421 P3d 385, *rev den*, 363 Or 677 (2018) (applying three-part test in *Mathews v. Eldridge*, 424 US 319, 96 S Ct 893, 47 L Ed 2d 18 (1976); holding that preponderance of evidence standard for employment-related disciplinary proceedings based on allegations of fraud or misrepresentation comported with due process);[21] s*ee also Mutual of Enumclaw v. McBride*, 295 Or 398, 667 P2d 494 (1983) (rejecting "clear and convincing" standard for proof of insurance fraud, the consequence of which was forfeiture of contractual benefit). Imposition of the penalty under ORS 314.400(6)(b) would neither deprive Plaintiff of liberty nor violate an interest approaching the kinds of fundamental interests that the United States Supreme Court has held must be protected through an intermediate standard of proof.[22] *Cf. Cruzan v. Director, Missouri Department of Health*, 497 US 261, 110 S Ct 2841, 111 L Ed 2d 224 (1990) (clear and convincing standard required to terminate an incompetent person's life-sustaining treatment); *Santosky v. Kramer*, 455 US 745, 768, 102 S Ct 1388, 71 L Ed 2d 599 (1982) (requiring clear and convincing standard for terminating parental rights); *Addington v. Texas*,

---

[20] This court does not have jurisdiction over criminal matters. *See* ORS 136.001 (codifying right to jury trial "in all criminal prosecutions"); ORS 305.425(1) (no jury in Tax Court).

[21] In contrast to the petitioner in *Robin*, Plaintiff has not alleged that imposition of the penalty would interfere with a significant interest, such as employment prospects. *Cf. Robin*, 291 Or App at 389-90. Indeed, Plaintiff affirmatively asked the IRS by letter to contact his employer to "correct this wage reporting error, and issue a revised W2" on the grounds that "Vtech Communications is not engaged in a 'trade or business,'" reciting elements of his legal argument.

[22] An intermediate standard of proof applies in United States Tax Court cases involving the federal civil penalty for "fraud with intent to evade tax." *See* IRC § 7454(a). However, for those cases Congress has elected to shift the burden of proof to the IRS, and the United States Tax Court, under broad statutory authority to make procedural rules, has adopted a "clear and convincing evidence" standard. *See* IRC § 7454(a) (assigning burden of proof); *id.* § 7453 (granting rulemaking power); US Tax Court Rule 142(b) (adopting clear and convincing evidence standard). By contrast, the Oregon legislature has not prescribed burden-shifting in tax cases involving allegations of fraud or for any statutory penalty, and the Oregon legislature has prescribed only one standard of review in this court.

441 US 418, 427, 99 S Ct 1804, 60 L Ed 2d 323 (1979) (clear and convincing standard for involuntary commitment proceedings comported with due process); *Woodby v. INS*, 385 US 276, 286, 87 S Ct 483, 17 L Ed 2d 362 (1966) (requiring clear and convincing evidence in deportation proceedings); *Schneiderman v. United States*, 320 US 118, 63 S Ct 1333, 87 L Ed 1796 (1943) (denaturalization proceedings). On the other hand, the state has a very strong interest in collecting income taxes and in deterring evasion; personal income tax revenues dwarf any other source of tax revenue flowing to Oregon state government. *See* Legislative Revenue Office, *2019 Oregon Public Finance: Basic Facts,* A-7; *cf., e.g.*, *SEC v. C.M. Joiner Leasing Corp.*, 320 US 344, 355, 64 S Ct 120, 88 L Ed 88 (1943) (preponderance of evidence standard for securities fraud comported with due process); *Herman & MacLean v. Huddeston*, 459 US 375, 388 n 27, 103 S Ct 683, 74 L Ed 2d 548 (1983) (same). The court concludes that due process does not require a standard of proof higher than that required by ORS 305.427. Oregon courts that have declined to impose an intermediate standard of proof also have preserved the ordinary civil standard of assigning the burden of proof to the party seeking affirmative relief, rather than shifting the burden to the opponent. *See, e.g.*, *Mutual of Enumclaw*, 295 Or at 407; *cf. Speiser v. Randall*, 357 US 513, 78 S Ct 1332, 2 L Ed 2d 1460 (1958) (state procedural rule requiring that taxpayer bear the burden of proof to show that he did not advocate the violent overthrow of government violated due process because the rule indirectly permitted the state to penalize taxpayer's fundamental right to free speech).

       e.   Conclusion: penalty under ORS 314.400(6)(b) applies in this case

       The court now applies these conclusions to the facts in this case. The court must consider whether (1) Plaintiff had the requisite mental state, namely whether he understood that he owed the tax when he filed his return showing zero Oregon income tax liability; and (2) whether he sought to avoid paying the tax by "artifice," such as "sophistry" or "specious compliance" with the letter of the law or other "evasion." In this case, the nature of Plaintiff's argument

informs the court's application of both elements of the penalty. Starting with element (2), as the court has explained above, Plaintiff's substantive argument that his remuneration from his employer is not income is wholly illogical and objectively unreasonable. As explained below, other taxpayers have deployed it so often, without success, that the legislature has included it in a list of "frivolous" arguments. The court concludes that Plaintiff's argument is the sort of sophistry that, when used with the mental state described in (1), constitutes evasion.

As to Plaintiff's mental state, his written submissions to this court give no indication that he lacks intelligence.[23] Two other facts evident from the written record provide insight to Plaintiff's state of mind. First, Plaintiff has a history of paying tax in prior years, as evidenced by his claims for refunds for 2013 through 2015. This reinforces that the deficiency that Defendant now asserts is due entirely to Plaintiff's legal arguments, and not due to a lack of knowledge or an inability to understand his obligations. Second, on his federal income tax return for 2016, Plaintiff falsely reported the amount of $9,231.52 on the line designated for "Federal income tax withheld from Forms W2 and 1099." In entering that amount, Plaintiff disregarded the amount of $0 shown on the Form W2 from his employer using exactly the same phrase. More significantly, he also disregarded his own attempt to "correct" that Form W2. When asking the IRS to preemptively "correct" the Form W2, Plaintiff entered $0 as the amount of "federal income tax withheld," and he accurately reported on that same correction form the amounts of $7,347.00 as "Social security tax withheld" and $1,884.52 as "Medicare tax withheld." However, when Plaintiff filed his federal tax return—having received no "corrected" Form W2—Plaintiff added up the amounts of the two nonincome taxes ($7,347.00 + $1,884.52) and mischaracterized that sum as withheld income tax.[24]

---

[23] Plaintiff, although not represented by counsel, called out Defendant twice for failing to timely appear and defend, filing motions for default each time. (Those motions failed based on the case law standards for granting default.) In addition, Plaintiff otherwise has submitted motions or responses at each step of this appeal.

[24] The IRS does provide a straightforward way to recover overwithheld Social Security and Medicare taxes by filing Form 843 (after asking the employer

Plaintiff's false entry of $9,231.52 as income tax withholding was the sole basis for the federal refund that he acknowledges receiving. The court concludes that Plaintiff knew better than to claim a refund of federal income tax he had never paid, but he made the claim regardless and kept the money, even arguing to this court that the IRS's refund proved that the IRS agreed with his argument. If there was any reason to doubt Plaintiff's mental state, this action removes it. The court concludes that Plaintiff knew he owed the Oregon income tax at issue here but chose to put forward a specious argument to try to avoid paying it.

For these reasons, the court finds that Plaintiff filed his false return for tax year 2016 with the intent to evade tax he knew he owed. Defendant correctly applied the penalty under ORS 314.400(6)(b).

### 3. *$250 "frivolous position" penalty (ORS 316.992(1))*

The $250 "frivolous position" penalty is mandatory if an individual taxpayer files "what purports to be a return *** which *** [c]ontains information that on its face indicates that the self-assessment is substantially incorrect."[25] ORS 316.992(1). The penalty applies if the taxpayer took a "position which is frivolous."[26] The statute defines "a position which is frivolous" as including "[a]n argument that wages or salary are not includable in taxable income." ORS 316.992(5)(c). In this case, Plaintiff acknowledges that he received "remuneration" from Vtech, but he asserts that the remuneration is not taxable income. Plaintiff argues that he never "disputed the taxability of wages." But the entire premise of Plaintiff's argument is that no compensation paid by a private employer is taxable, an argument that would exclude from income the great majority of wages. The court

---

to provide the refund). *See* Internal Revenue Service, *Instructions for Form 843* at 1 ("Use Form 843 to claim or request *** [a] refund to an employee of excess social security, Medicare, or RRTA tax withheld by any one employer, but only if your employer will not adjust the overcollection.").

[25] *See* ORS 316.992(1) ("The Department of Revenue *shall* assess a penalty of $250 ***." (Emphasis added.)).

[26] Alternatively, the taxpayer must have intended to "delay or impede the administration of the income tax laws of this state," which Defendant does not allege in this case. ORS 316.992(1)(b).

concludes that Plaintiff's position is within the category of arguments that the legislature intended to classify as frivolous because they are wrong "on [their] face."[27]

### 4. *Penalty (ORS 305.437) and attorney fees (ORS 20.105(1)) for lack of objectively reasonable basis for position*

Defendant's claims for a penalty under ORS 305.437 and for attorney fees under ORS 20.105(1) depend on whether Plaintiff's position lacked an "objectively reasonable basis."[28] The court already has explained the complete absence of any logical basis for Plaintiff's argument. The court is further of the view that Plaintiff's position that he owed no tax because his remuneration for services happened to come from a private employer is a mere variation on the kinds of arguments that this court has previously found lacking in any objectively reasonable basis. *E.g.*, *Clark v. Dept. of Rev.*, 332 Or 236, 237, 26 P3d 821 (2001) ("Taxpayer's views concerning

---

[27] The court notes that a common feature of many of the arguments that the legislature included in the nonexclusive list of frivolous positions is a false notion that the income tax laws contain fundamental flaws that render the tax invalid for large numbers of unsuspecting taxpayers. *See Clark v. Dept. of Rev.*, 15 OTR 197, 198, *adh'd to on recons*, 15 OTR 209 (2000), *aff'd*, 332 Or 236, 26 P3d 821 (2001) ("Taxpayer's arguments suggest that millions of Americans, including citizens of Oregon, 'have been duped' by the taxing authorities into believing they are required by law to pay an income tax, but taxpayer is enlightened and knows the truth.").

[28] Both statutes use the word "shall" and thus are mandatory in the sense that they require the court to impose the penalty or attorney fees, although they leave some discretion to the court to determine the amount. ORS 305.437 provides:

"(1) Whenever it appears to the Oregon Tax Court that proceedings before it have been instituted or maintained by a taxpayer primarily for delay or that the taxpayer's position in such proceeding is frivolous or groundless, a penalty in an amount not to exceed $5,000 shall be awarded to the Department of Revenue by the Oregon Tax Court in its judgment. The penalty so awarded shall be paid within 10 days after the judgment becomes final. If the penalty remains unpaid, the department may collect the amount awarded in the same manner as income taxes are collected under ORS 314.430.

"(2) As used in this section:

"(a) A taxpayer's position is 'frivolous' if there was no objectively reasonable basis for asserting the position.

"(b) 'Position' means any claim, defense or argument asserted by a taxpayer without regard to any other claim, defense or argument asserted by the taxpayer."

the voluntary nature of the income tax system and the non-taxability of wages paid by private employers for an individual's labor, however honestly held, are so incorrect as to render legal arguments based on them frivolous."); *Negrete v. Dept. of Rev.*, 19 OTR 134 (2006) (taxpayer's argument that his wages were not taxable objectively unreasonable); *Sesma v. Dept. of Rev.*, 16 OTR 29 (2002) (same). Plaintiff has not withdrawn his arguments during this proceeding. The court finds that Plaintiff maintained an objectively unreasonable position in his arguments on the merits for purposes of the penalty under ORS 305.437 and the attorney fee provision in ORS 20.105. The court awards attorney fees in an amount to be determined, assuming Defendant seeks a supplemental judgment of attorney fees as provided in Tax Court Rule 68. Noting Plaintiff's meritless subarguments and procedural arguments at each step of the audit and during the judicial appeals, and the additional time and expense associated with the appeal in this division, the court awards a penalty of $4,000 pursuant to ORS 305.437, in lieu of the $1,000 that the magistrate awarded.

## V.   CONCLUSION

For the foregoing reasons, the court hereby orders:

(1)   That Defendant's assessment of tax, interest and penalties be sustained; and

(2)   That Plaintiff pay a penalty of $4,000 to Defendant within 10 days after judgment in this case is entered. Now, therefore,

IT IS ORDERED that Plaintiff's cross-motion for summary judgment is denied; and

IT IS FURTHER ORDERED that Defendant's motion for summary judgment is granted.